Cheshire, }
Jan. 3, 1922. }

### VALENTINE B. WESTON *v.* EMOGENE H. BALL.

In an action for breach of a contract, whereby plaintiff contracted to give his services as a superintendent to the defendant, evidence that during prior negotiations looking to a profit-sharing agreement the plaintiff made false representations as to his knowledge and ability to conduct the business to induce the defendant to enter therein was competent, although the negotiations were abandoned and the contract declared on was subsequently made.

BILL OF EXCEPTIONS, allowed by *Kivel,* C. J., at the April term, 1920, of the superior court.

The plaintiff brought an action at law to recover damages for the defendant's failure to fully perform a written contract of hire for the plaintiff's "services as Superintendent of our entire business, including foundry, pattern shop and machine shop." It appeared that the parties first negotiated concerning a profit-sharing agreement. This plan was not carried out, and a few weeks later the contract in question was made. The defendant offered to show that at the earlier conferences the plaintiff made false statements as to his knowledge and ability to conduct the business. The evidence was excluded, subject to exception.

*William H. Watson* (by brief and orally), for the plaintiff.

*George A. Weston* (of Vermont) and *Chester B. Jordan* (*Mr. Jordan* orally), for the defendant.

PEASLEE, J. The defendant excepted to the exclusion of evidence tending to show what the plaintiff had represented his qualifications

and capacity to be. The exclusion is sought to be justified upon the ground that when the representation was made the parties were treating regarding the engagement of the plaintiff upon a profit-sharing basis, and that this plan was subsequently abandoned and a contract of hire for wages was entered into. It would seem that the whole transaction was so intimately connected that any representations of the character of those charged could be found to relate to all the dealings between the parties. But if it be assumed that the negotiations for the profit-sharing scheme were wholly distinct from the subsequent contract of employment, the evidence was none the less admissible.

When the parties entered upon the last negotiations, which terminated in the contract of hire, the plaintiff knew that the defendant had theretofore been misinformed by him upon questions material to the contract they were about to make. It could be found also that he knew the defendant did not know of the falsity of his statements. In this situation the duty of the plaintiff to inform the defendant of the truth is entirely clear. The mere failure to disclose material facts "which the other did not know and could not learn" is sufficient evidence to warrant sending a case to the jury. *Benoit* v. *Perkins*, 79 N. H. 11, 17, and cases cited. Much more is failure to correct an erroneous impression which the party has caused by his own previous false statements a sufficient ground of complaint. The excluded evidence tended to prove that the defendant had legal ground for refusing to go on with the contract.

The evidence was also admissible upon another ground which is urged by the defendant. As an aid to construing and applying a contract, it is always permissible to show the facts surrounding the undertaking, including what was said in the preliminary negotiations. "Having themselves locked up the idea in the words, themselves must furnish the key to unlock it." 4 Wig. Ev., s. 2465. "The instrument to be interpreted, whatever may be its nature, should be read in the light of all the circumstances which may be supposed to have been present to the mind of its author when it was framed." *Noyes* v. *Marston*, 70 N. H. 7, 16.

The discussion of the general subject in the numerous cases in which the principle has been applied in this jurisdiction make it abundantly clear that the mutual understanding of the parties to a written contract, as to the sense in which they used the language of the writing, may be shown by their oral negotiations which preceded the written agreement. *New England Box Co.* v. *Flint*, 77 N.

H. 277; *Kendall* v. *Green,* 67 N. H. 557; *Gill* v. *Ferrin,* 71 N. H. 421; *Tilton* v. *Society,* 60 N. H. 377; *Remick* v. *Merrill, ante,* 225.

The precise question here presented does not appear to have been passed upon in this state. In *Cordopatis* v. *Bakalopoulos,* 79 N. H. 77, exceptions were taken which might have raised the question, but the position now taken was not advanced at the argument and was not considered. The modern authorities elsewhere are to the effect that the evidence should be admitted. "If the previous negotiations make it manifest in what sense the terms of the contract are used, such negotiations may be resorted to as furnishing the best definition to be applied in ascertaining the intention of the parties. The sense in which the parties understood and used the terms of the contract is thus best ascertained." *Keller* v. *Webb,* 125 Mass. 88, 89; *Stoops* v. *Smith,* 100 Mass. 63; *Miller* v. *Stevens, Ib.,* 518; *Garfield &c. Company* v. *Company,* 199 Mass. 22; *Putnam-Hooker Company* v. *Hewins,* 204 Mass. 426; *Chicago Auditorium Ass'n* v. *Corporation,* 244 Ill. 532; *Grant* v. *Company,* 85 Conn. 421; *Lambert &c. Company* v. *Carmody,* 79 Conn. 419.

There may be cases where the question whether the evidence tends to elucidate the language of the writing or whether, on the other hand, its sole tendency is to contradict the writing (*Lancaster & Jefferson Elec. Light Co.* v. *Jones,* 75 N. H. 172, 174) is a difficult one to decide. The present controversy is not of that class. The contract is expressed to be for "your services as Superintendent of our entire business." As to what degree of skill or efficiency could be demanded, the written contract is not specific. It would not be a contradiction of the writing to show that "our entire business" was represented by the defendant to the plaintiff as a simple and easily conducted enterprise, or as one requiring great skill and a high degree of efficiency. The same thing is true of the plaintiff's statements as to his experience, knowledge and capacity. They throw some light upon what the parties meant when they said "your services as Superintendent."

The plaintiff's objection to the evidence upon the ground that the conversations in question related to a different contract (if well grounded in fact) has no application to this phase of the case. The question here is merely what the mutual understanding of the parties was as to the meaning of certain language. The evidence is received because it tends to show "that which was in the minds of the parties." *Swett* v. *Shumway,* 102 Mass. 365, 368. The fact to be proved is that the parties had a common standard of meaning (4 Wig. Ev., s. 2466), and what caused them to be in that common state of mind

is important only in so far as it tends to prove that such common understanding existed. "If proved as a fact within the minds of the parties when the written engagement was entered into, it tended to show what they meant by what they said." *New England Box Co. v. Flint, supra,* 279.

Nor does the fact that the plaintiff's real intent or understanding may have differed from the one he may have expressed by false statements to the defendant render the rule inapplicable. Knowing that the defendant accepted the language of the written contract in the sense with which the plaintiff's representations endowed it, the plaintiff would be bound to perform the contract precisely as he would have been if the common understanding had resulted from negotiations honestly conducted. 4 Wig. Ev., s. 2466.

As the verdict must be set aside because of the exclusion of material evidence, it is unnecessary to consider the plaintiff's exception to the order cutting down the award of damages to him.

*Defendant's exception sustained; new trial.*

All concurred.