CLAYTON C. SMITH,

*vs.*

FIRST PERSONAL BANKERS CORPORATION, a corporation of the State of Delaware, HUBERT J. MIDDLETON, LAWRENCE S. HELFFRICH, H. N. BENNETT, STEVEN LOVAS, JR., ELMER PENCE and LAWRENCE S. SCHNEIDER.

*New Castle, Feb. 26, 1934.*

*Howard Duane,* of the firm of Keedy & Duane, for the Middleton group.

*John Biggs, Jr.,* and *Stewart Lynch,* for the Smith group.

THE CHANCELLOR: Two questions may be culled from those which are presented by the master's report that are determinative of the exceptions. It is unnecessary to take notice of any others.

1. The first question concerns the proper stock ledger by which the master should have been guided in ascertaining who were entitled to vote. The statute provides (*Section* 29 of the *General Corporation Law* [*Rev. Code* 1915, § 1943, as amended by 36 *Del. Laws,* c. 135, § 15]) that "the original or duplicate stock ledger shall be the only evidence as to whom (*sic*) are stockholders entitled * * * to vote in person or by proxy at such election," referring to the election of directors by the stockholders. The by-laws provide (*Article IV, Section* 5) that the treasurer "shall, unless otherwise determined by the directors, have charge of the original stock books, transfer books and stock ledgers and act as transfer agent in respect of the stock and securities of the company."

Middleton was treasurer of the company. He produced before the master the original stock ledger kept by him and the master was guided by it in determining who were entitled to vote. The exceptant contends that he erred in that regard, claiming that he should have been guided by another book produced by Smith who was assistant treasurer. It appears that Middleton had declined to enter in his books certain stock which had been presented for transfer. The reasons for his refusal need not be stated. No proceedings were instituted by the alleged transferee of the stock to compel its transfer. Upon Middleton's declination to enter the transfers (which seems not to have been a final determination on his part) the then president of the corporation ordered the assistant treasurer, Smith, to prepare

another stock ledger showing the transfers which Middleton was declining to make. Smith prepared such a book and it was the book prepared by him under these circumstances that the exceptant contends the master should have accepted.

I am of the opinion that the master was correct in refusing to accept the Smith book for his guidance. I am at a loss to see by what authority the president of the corporation undertook to deprive Middleton of his office as custodian of the stock records and to confer on another the duty of having charge over those records, an office and a duty which the by-laws of the corporation conferred upon him. The clause in the by-law provision—"unless otherwise determined by the directors"—clearly implies that the duly elected treasurer should not be disturbed in his duty of keeping the stock records by any authority other than that of the directors. There is no pretense that the directors exerted their authority in the matter. The cases of *Schoharie Valley Railroad, (N. Y.)* 12 *Abb. Prac. (N. S.)* 394; *Socorro Mountain Mining Co. v. Preston,* 17 *Misc.* 220, 40 *N. Y. S.* 1040; *In re Argus Co., et al.,* 138 *N. Y.* 557, 34 *N. E.* 388, are not opposed to the conclusion reached by the master, for, as pointed out by him, in each of those cases the new books were made up on the authority of the directors.

2. The next question is concerned with the right of alleged voting trustees to vote stock which, it is contended, was deposited in a voting trust, but which was not registered in their names. *Section* 18 of the *General Corporation Law (Rev. Code* 1915, § 1932, as amended by 37 *Del. Laws,* c. 129, § 6) under which the corporation was formed provides that voting trusts of stock may be created. Its language in part is—"One or more stockholders may by agreement in writing deposit capital stock with or transfer capital stock to any person," etc., for voting trust purposes. There was no transfer of stock in the present case, because Section 2 of By-Law VI provides that stock is transferable

only on the books of the corporation, and there was no transfer on the books. But it is said there was certainly a deposit of stock, and so the provisions of the statute were met. This contention raises the question of whether a voting trust may be formed by the mere deposit of stock with voting trustees in contradistinction to a transfer on the books. The statute in the quoted clause, if its literal language be observed, recognizes such a distinction. But later language in the section from which the quoted clause is excerpted lends some support to the suggestion which is advanced by the solicitor for the Middleton faction, that a "deposit" of stock is never effected within the meaning of the section unless it is followed by an actual transfer. Language is to be found in the master's report, confirmed by me, in the case of *In re Chilson*, 19 *Del. Ch.* 398, 168 *A.* 82, which appears to hold that there may be a deposit of stock under a voting trust without an accompanying transfer. The language referred to is dictum, and I think it well that it should stand as a query rather than as the statement of an approved rule.

I find it unnecessary in this case to pass upon the question which that query raises, as did the master. This is because of the principle that a voting trust in its operation is governed by the terms of the agreement which the parties to it have chosen to adopt. To the extent of its proper application, the agreement is the charter, so to speak, of the trust. *Chandler v. Bellanca Aircraft Corp., et al.*, 19 *Del. Ch.* 57, 162 *A.* 63, which was affirmed by the Supreme Court without written opinion. See 19 *Del. Ch.* 57, 75. The trust does not come into being except as the terms and conditions of its forming are complied with. In the instant case it appears that the voting trust agreement specifically provided that stock, certificates for which are deposited under it, "shall be transferred to the name of the voting trustees upon the books of the company." The shares of stock which the alleged voting trustees attempted to vote and the votes of which the master rejected, were never transferred to the

names of the voting trustees. The agreement therefore was not complied with. Any registered holder of stock who had sent in his stock to be transferred to the voting trustees, the transfer not having been effected, was entitled to vote his stock. There were two hundred shares, voted by the registered owner, which fell in that category. The deposit of them with the voting trustees duly endorsed for transfer did not amount to the granting to the voting trustees of an irrevocable proxy. *In re Chilson, supra.*

The views expressed upon the two points above discussed dispose of the case. The other points raised by the exceptants are not necessary to be considered, because no matter how they are answered the result would not be changed in view of the answer given to the two that have been mentioned.

The report of the master will be confirmed and a decree entered in accordance therewith.