PHILIP L. FIELD,

*vs.*

CARLISLE CORPORATION, a corporation of the State of Delaware.

*New Castle, October 20, 1949.*

*Hugh M. Morris* and *S. Samuel Arsht,* of the firm of Morris, Steel, Nichols & Arsht, (*William F. Corson,* of the firm of Garey & Garey, of New York City), for plaintiff.

*Stewart Lynch,* (*Frank A. Zunino, Jr.,* of the firm of Spence, Hotchkiss, Parker & Duryea, of New York City), for defendant.

SEITZ, Vice Chancellor: Plaintiff is a stockholder of defendant Carlisle Corporation. By this action plaintiff seeks to prevent the defendant from issuing an undetermined number of its shares of common stock in exchange for shares of capital stock of another corporation known as Dart Truck Company (hereinafter called "Dart").

From 1944 until December 27, 1948, defendant was a wholly owned subsidiary of the Pharis Tire and Rubber Company (hereinafter called "Pharis"). In October 1948 Pharis voted to liquidate, and in connection with such liquidation, which was made on January 10, 1949, distributed to its stockholders all of the issued and outstanding stock of defendant. As part of the liquidation, Pharis transferred to defendant certain of its businesses with a book value of approximately $631,000.

Defendant's authorized capital stock consists of 500,-000 shares of $1.00 par value common stock of which 208,-904 shares were issued and outstanding and 43,262 held as treasury stock on August 26, 1949. Dart's authorized capital stock consists of 1,000 shares of no par value common stock of which 800 were issued and outstanding and 200 held as treasury stock on August 26, 1949.

The defendant's stock seems to be fairly widely held although one George L. Ohrstrom and his associates own or represent approximately 20,000 shares. Dart has only 10 stockholders of record; 5 of these are nominees who hold 50% of the stock for certain foreign interest, while the other 50% is owned by George L. Ohrstrom and his associates.

On August 26, 1949, defendant entered into what is styled an "agreement" with Dart. It is this agreement which gives rise to the present controversy.

The agreement recites, *inter alia,* that the management of defendant corporation and Dart considered that it would be in the best interests of both for defendant to

obtain 80% or more of Dart's outstanding common stock by an exchange of defendant's stock for Dart's stock. Defendant then promises to make available to the Dart stockholders shares of defendant's common stock in exchange for Dart's common,

"* * * on the basis of such number of shares of Carlisle for each 1 share of Dart as may be determined to be fair and equitable by an independent appraiser to be designated by Carlisle, provided, however, that such exchange shall not exceed a maximum of 218 shares of Carlisle for each 1 share of Dart. Carlisle shall advise Dart of the number of shares so determined by the appraiser on or before October 15, 1949. This offer shall remain irrevocably open until 3:00 p. m. on November 30, 1949 and the exchange shall become effective upon the deposit with The New York Trust Company as escrow agent (with a letter of transmittal in a form substantially similar to the letter attached hereto and marked 'Exhibit A') of 80% or more of the 800 outstanding shares of Common Stock of Dart duly endorsed for transfer or with separate stock powers attached with 'signatures guaranteed.' "

The agreement contains other provisions, but they are not particularly pertinent to the present issue, except that Dart was not bound by the agreement to do more than submit defendant's offer to Dart's stockholders together with any recommendation it cared to make.

Thus defendant irrevocably bound itself to issue, but neither Dart nor its stockholders bound themselves to accept up to 174,400 shares of defendant's stock for all of Dart's outstanding shares—the actual number to depend upon an appraiser's determination. This "agreement" was negotiated on the date of its execution by the defendant's board of directors acting for defendant and by Ohrstrom and his associates acting for Dart. An appraiser has been designated, but as of the date this matter was argued he had not rendered a report.

At the time the complaint was filed, a restraining order was issued against the defendant restraining it from exchanging or agreeing to exchange any of the shares of its capital stock for shares of Dart's capital stock. At the same time the court issued a rule to show cause why a pre-

liminary injunction in the same tenor should not issue. This is the decision on the rule.

Plaintiff contends that defendant should be enjoined from issuing any of its shares of stock in exchange for the Dart stock under the so-called "agreement" for two reasons: (1) the "agreement" of August 26, 1949 constitutes an unlawful delegation of the power of the board of directors, and (2) the proposed transaction is so unfair and inequitable as to constitute a fraud upon defendant's stockholders who are not Dart stockholders.

May the board of directors of a Delaware corporation validly execute a contract which provides for a binding determination by a non-director of the value of the consideration to be received for the issuance of its stock, subject however to a fixed upper limit? The defendant argues first that this was an allowable delegation of power by the directors, and second that the directors performed their function in evaluating the property by having fixed 218 shares of defendant for each share of Dart as the upper limit.

Portions of *Sections 9 and* 14 of the *General Corporation Law of Delaware, Rev.Code* 1935, §§ 2041, 2046, are pertinent to our problem. Insofar as apposite, they provide:

"Sec. 9. * * * The business of every corporation organized under the provisions of this Chapter shall be managed by a Board of Directors, except as hereinafter or in its Certificate of Incorporation otherwise provided. * * * A Director of any corporation organized under the provisions of this Chapter, or a member of any Committee designated by the Board of Directors pursuant to authority conferred by this Chapter, shall in the performance of his duties be fully protected in relying in good faith upon the books of account or reports made to the corporation by any of its officials, or by an independent certified public accountant, or by an appraiser selected with reasonable care by the Board of Directors or by any such Committee, or in relying in good faith upon other records of the corporation." As amended by 44 *Del. Laws, c.* 125, § 2.

"Sec. 14. * * * Subscriptions to, or the purchase price of, the capital stock of any corporation organized or to be organized under any law of this State may be paid for, wholly or partly, by cash, by

labor done, by personal property, or by real property or leases thereof; * * *. And in the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases thereof, shall be conclusive.

"As to corporations incorporated prior to April 1, 1929, shares of capital stock without par value, whether common or preferred or special, may be issued by the corporation from time to time for such consideration as may be fixed from time to time by the Board of Directors thereof, pursuant to authority conferred by the Certificate of Incorporation or, if such authority shall not be so conferred on the Board of Directors, then for such consideration as may be fixed by the consent in writing of, or by vote of, the holders of record of two-thirds of the total number of shares of each class of stock then outstanding and entitled to vote in respect thereto, such vote to be given at a meeting called for that purpose in such manner as shall be prescribed by the by-laws. As to corporations incorporated on or after April 1, 1929, shares of capital stock without par value, whether common or preferred or special, may be issued by the corporation from time to time for such consideration as may be fixed from time to time by the Board of Directors thereof, * * *."

The defendant was incorporated in 1917 and Article Eighth of its amended certificate of incorporation provides:

"The common stock may be issued by the corporation from time to time for such consideration as may be fixed from time to time by the Board of Directors of the corporation, and any and all such shares so issued, the full consideration for which has been paid or delivered, shall be deemed full paid stock and not liable to any further call or assessment thereon, and the holder of such shares shall not be liable for any further payments."

The general principle here involved has previously been considered by this court. The decision in *Bowen v. Imperial Theatres, Inc.*, 13 *Del.Ch.* 120, 115 *A.* 918, clearly indicates that the directors of a Delaware corporation must place a value on property acquired as a consideration for the issuance of stock. The court relied upon certain language in Delaware corporation statutes in arriving at its conclusion. The additions to and changes in the statutes since that decision in 1922 tend only to emphasize that the court's decision is still the law.

But defendant contends that the *Bowen* case does not

prevent the directors from delegating this duty and, says defendant, that is exactly what the directors did here when they agreed that up to a certain value the appraiser's determination of value would be binding on their corporation. May corporate directors delegate their conceded duty in this respect?

The quoted statutes impose the duty on the directors to fix the value of property received for the corporation's stock. *Section* 14 explicitly states that the corporation's stock may be issued "for such consideration as may be fixed from time to time by the Board of Directors." The defendant's certi-,ficate of incorporation contains substantially the same language. Furthermore, *Section* 14 says that in the absence of actual fraud the judgment of the directors as to the value of the property received for the stock shall be conclusive. Neither the statutes nor the certificate contain any language purporting to authorize the delegation of this duty. Leaving aside other contentions, I do not believe the power to delegate this vitally important duty can be fairly implied from the language of the statute. This is particularly true where the statute imposes the duty on the directors to deal with the particular subject matter. The importance to the corporation of the subject matter— ownership of the corporation—tends also to negative any implication that the directors might delegate it in a manner not explicitly authorized by statute.

I conclude that under the Delaware statutes the directors of a Delaware corporation may not delegate, except in such manner as may be explicitly provided by statute, the duty to determine the value of the property acquired as consideration for the issuance of stock. I naturally do not decide any question concerning the delegable power of the board of directors in situations other than the one here presented.

The defendant contends that, even assuming, as I have decided, that the duty to determine value is non-delegable,

nevertheless, the action of the directors here is valid because they did perform their duty by fixing an upper limit on the value which the appraiser might determine.

Preliminarily, it is perfectly clear that the board of directors may employ non-directors to assist them in arriving at the value to be placed on the property to be received in exchange for the corporation's stock. Indeed, one can imagine cases where they would be guilty of gross misconduct if they did not do so. But appraisers, etc., are employed to aid the directors. This is not a case where parties are submitting a legal controversy concerning value to an appraiser. The directors have the last say, not the appraisers, etc., appointed by them. *Section* 9 shows this when it gives the directors protection where they rely on the report of an appraiser. But reliance assumes knowledge of the report. Here the directors bound their corporation even before seeing the appraisal—a significant difference.

Is the fact that the directors set an upper limit of importance in determining whether or not they performed their duty?

The minutes of the meeting of the defendant's board of directors at which the "agreement" under attack was approved demonstrate beyond question that the fixation of the upper limit of 218 shares of defendant for each share of Dart in no way constituted an exercise of judgment by the defendant's directors. The minutes recite that the representatives of Dart told the defendant's board of directors that they would submit for stockholder approval an offer of 218 shares of defendant's stock for each one share of Dart's stock. The minutes further state that the board of directors of defendant concluded that "they would be willing to exchange 218 shares of Carlisle (defendant) for each 1 share of Dart provided that such exchange were deemed fair and equitable by an independent appraiser designated by Carlisle." The resolution passed by the defendant's directors authorized the execution of the agree-

ment with Dart and, *inter alia,* designated Stevenson, Jordan & Harrison, Inc. as "the independent appraiser to determine the fair and equitable basis for the exchange of common stock of Carlisle for common stock of Dart."

It is evident that the upper limit of 218 shares of defendant's stock was based on Dart's offer and was not determined by the defendant's directors. The minutes recite that the appraiser was being appointed to determine the value of the Dart stock. However, under the agreement the appraiser was not to report his findings to the defendant's board so that they might then determine the value of the Dart stock. On the contrary, the defendant's directors bound the defendant to accept the appraiser's evaluation before they knew what it was, and the upper limit was, as stated, merely the original figure at which Dart was willing to make the exchange without an appraiser.

Thus, even if we assume that directors might discharge their duty of determining the value of property to be received in exchange for stock by fixing some range of value, rather than an exact figure, it is clear that we are not here confronted with that situation. The defendant's directors did not purport to determine that a sum within any reasonable range would be a fair value for the property. I decide nothing with respect to that situation. The defendant's directors offered 175 shares of defendant for each one share of Dart at the very meeting in question and this was rejected. While the spread between 175 shares and 218 shares might not be thought to be very great, it is of real substance, particularly in a relatively small corporation. Dollar-wise, based on market value, it amounts to a spread of about $100,000. This court cannot say that such a sum is so small that the board of this corporation was justified in leaving the exact amount to the decision of a stranger to the board.

I conclude that the directors of this corporation in executing the "agreement" of August 26, 1949 did not exercise the duty imposed on them by statute to determine the value

of the stock to be acquired in consideration for the issuance of the defendant's stock.

Since the undisputed facts demonstrate that the defendant's directors in executing the "agreement" of August 26, 1949 failed to perform the statutory duty imposed upon them, a preliminary injunction will issue enjoining them from making any transfer of stock pursuant to the terms of the alleged "agreement". In view of my conclusion, it becomes unnecessary to pass upon plaintiff's contention that the defendant's directors were guilty of fraud in executing the agreement in question.

An order accordingly will be entered on notice.