LAWRENCE B. BRADY and WILLIAM C. BRADY, Trustees under a Voting Trust Agreement dated September 15, 1948, between AMERICAN SULPHUR COMPANY, S. A. and EUGENE L. NORTON, WILLIAM BIEL, LAWRENCE B. BRADY and WILLIAM C. BRADY,

*vs.*

MEXICAN GULF SULPHUR COMPANY, a corporation of the State of Delaware, EUGENE L. NORTON, EDWIN D. BELKNAP, EDWIN S. GARDNER and CYRUS M. LERNER.

*New Castle, April 18, 1952.*

*Aaron Finger*, of Richards, Layton & Finger, and *William E. Taylor, Jr.*, for plaintiffs.

*James R. Morford* and *William H. Bennethum*, of Morford, Bennethum, Marvel & Cooch, for defendants.

SEITZ, Chancellor: While this is a proceeding under Section 31 of the *General Corporation Law, Rev. Code* 1935, § 2063, to review a stockholders' election of directors, the decision turns solely on the issue of the irrevocability of a certain proxy.

Plaintiffs are two of the voting trustees under a certain voting trust agreement dated September 15, 1948 between the American Sulphur Company, S. A. (hereafter called "American") and Eugene L. Norton, William Biel, Lawrence B. Brady and William C. Brady, presumably as voting trustees. Defendants are the Mexican Gulf Sulphur Company (hereafter called "Mexican") and four defendants who claim to be duly elected directors under what I shall call the "Norton Slate." The other slate of directors I shall call the "Brady Slate." Three other individuals were on both slates and the validity of their election is conceded.

Some discussion of the history of Mexican is pertinent to an understanding of the issues. In 1946 the defendant, Eugene L. Norton, was asked to head a company to be organized for the purpose of acquiring certain Mexican sulphur concessions from American. Mr. Norton agreed to the proposal on certain conditions which were met, including a provision that the majority of the stock of the corporation to be formed should be placed in a voting trust controlled by Norton, so as to protect his position.

The corporate defendant, Mexican, a Delaware corporation, was organized and Mr. Norton became, and has since continued as, president. American, which was in effect, owned 100% by Lawrence and William Brady, received about 400,000 shares of Mexican in consideration of sulphur property rights transferred by American to Mexican's wholly owned subsidiary.

At about the same time a voting trust was created under date of May 20, 1947 and American presumably pursuant to one of the Norton conditions, deposited 355,000 common shares of Mexican thereunder; this being a majority of the outstanding shares. There were five voting trustees of whom Mr. Norton named three. This agreement was terminated and by a new voting trust agreement dated September 15, 1948 the terms of the old agreement were adopted except that the new voting trust was reconstituted with four voting trustees (the two Bradys, Norton and Biel) and the Mexican stock held thereunder was reduced to 315,000 shares. Although these are the only shares in the trust, there is a provision for additional stockholders.

Each year prior to 1951, voting trustees Lawrence and William Brady gave their proxies either to Norton or Norton and Biel. By an instrument dated August 28, 1951 they gave their proxies in irrevocable form, for the term of the trust or any extensions, to Norton, Biel and Nachtman (majority vote to control). Neither Norton nor Biel was designated as proxy in his capacity as voting trustee. It is this proxy which is the subject matter of the present law suit, because, at the stockholders' election of directors here under review the Bradys, as voting trustees, sought to vote one-half of the 315,000 shares in the voting trust. They did so on the theory that they could and did revoke the proxy previously given.

Defendants contend that the proxy was irrevocable because it was coupled with an interest. Defendants tacitly concede that the proxy was revocable even though irrevocable in form, unless this court finds that it was coupled with an interest. It may be noted that the proxy itself does not reveal any "interest" which would make it irrevocable and so the "interest," if any, must be found outside the language of the proxy instrument. Defendants say this "interest" arises from the claimed interests of Biel and Norton in the stock subject to the trust, and from an alleged agreement hereafter discussed.

Defendant Norton claims that upon the termination of

the voting trust he is entitled to receive 50,000 out of the 315,000 shares of Mexican subject to the trust. The defendant Biel claims that he is entitled to a total of 24,500 of the shares which are subject to the voting trust. It may be noted that the validity of these claims is not here involved. They are the subject matter of a pending action in Texas.

Defendants Biel and Norton contend that their claimed interests in the shares subject to the voting trust are "interests" in the very stock concerning which the proxy is to be exercised. In consequence, they say that we have here a proxy coupled with an interest in the subject matter itself (the shares), thus rendering the proxy irrevocable. See *In re Chilson,* 19 *Del.Ch.* 398, 168 *A.* 82. Defendants further contend that the execution of the irrevocable proxy was part of a larger agreement whereby certain parties including the Bradys, received certain benefits which created such an interest in Norton and Biel as to make the proxy irrevocable. Defendants also contend that the complaint should be dismissed because a recognition of the plaintiffs' right to revoke would give effect to a breach of contract. Finally, defendants claim that the petition should be dismissed because plaintiffs come into court in this cause with unclean hands.

Plaintiffs advance many arguments in support of their contention that the proxy in question was revocable. They contend that the voting trustees here could not agree to give an irrevocable proxy because the voting trust agreement conferred no such power.

It is now well estatblished that subject to the limitations found in *Section* 18, *Rev.Code* 1935, § 2050, which authorizes the creation of voting trusts, the powers of the voting trustees must be found in the voting trust agreement itself. *Chandler v. Bellanca Aircraft Corp.,* 19 *Del.Ch.* 57, 162 *A.* 63, affirmed without opinion. Let us first look at *Section 18* and then consider the present voting trust agreement.

*Section* 18 of the *General Corporation Law* per-

mits voting trustees to vote by proxy. The agreement itself adopts this grant of power. But the question here is whether they are here authorized by the agreement to give an irrevocable proxy.[1] It is clear from a reading of the voting trust agreement that there is no explicit language authorizing the voting trustees to give an irrevocable proxy. The fact is that at least one provision of the voting trust agreement necessarily negatives any inference that such a power was granted. Thus, paragraph 7 of the agreement provides in part:

> "In voting or giving directions for voting any of the Common Stock deposited hereunder in any election of directors, the voting trustees will exercise their best judgment from time to time to select suitable directors, and, in voting or giving driections for voting and acting on other matters for stockholders, action, and in appointing agents of whatever nature, the voting trustees will exercise like judgment * * *."

To suggest that they may completely and irretrievably redelegate their discretionary duties for the entire term of the voting trust is incompatible with the continuing duty imposed on them and with the apparent purpose of a voting trust.

▮▮ My approach here is set forth in *Chandler v. Bellanca Aircraft Corp., supra.* In that case the late Chancellor Wolcott pointed out that the powers of voting trustees, within legal and public policy limits, are to be found in the voting trust agreement. See also *Smith v. First Personal Bankers Corp.,* 20 *Del.Ch.* 89, 171 *A.* 839. He further stated, in effect, that by such an agreement the stockholders constituted the trustees their irrevocable proxies for the period of the agreement. Now, in the absence of a provision in the agreement to the contrary, do such voting trustees have the power to completely divest themselves of voting power by executing an irrevocable proxy? To do so they must somehow "raise" an "interest" in the proxy holder. But if the voting trustees have nothing but the voting rights, the trans-

---

[1] I assume without deciding that a provision in a voting trust agreemen authorizing or forming the basis for an irrevocable proxy would be valid.

fer of such rights is not sufficient to raise such an "interest" as will make the proxy irrevocable. See *In re Chilson, supra.* This is but another way of saying that where, as here, the voting trust instrument merely gives the trustees voting control it does not give them powers sufficient to create a proxy coupled with an interest.

While only American's registered stock ownership in Mexican is now under the voting trust, the defendants themselves contend that many individuals, including the defendants Biel and Norton, have a beneficial interest in such stock. Moreover, by the terms of the voting trust agreement, other shareholders may become participants therein. These factors point up the necessity for the voting trustees to act in accordance with the power granted by the provisions of the agreement because they may well have to answer to persons other than themselves.

I conclude that the terms of the voting trust agreement deny these voting trustees the power to create such an interest as would render the proxy here given irrevocable.

It follows from my conclusion that, without regard to other arguments, the purported irrevocable proxy given by the two voting trustees was not authorized by the voting trust agreement and was therefore only a revocable proxy. In consequence, it was lawfully revoked by the plaintiffs, voting trustees, and the shares voted by them under the provision of the statute should have been counted.

But defendants contend that a recognition here of plaintiffs' right to vote the shares in question would give effect to a breach of contract. Without determining what rights, if any, defendants possess because of an alleged breach of an alleged contract, it seems clear to me that the proxy being revocable, the court must here recognize and give effect to its revocation. I do not believe that this situation is the same as confronted the Supreme Court in *Ringling Brothers-Barnum & Bailey Combined Shows, Inc., v. Ringling,* 29 *Del.Ch.* 610, 53 *A.2d* 441. In that case the Supreme Court

upheld a pooling agreement but refused to grant specific performance because terms justifying such relief were not sufficiently set forth in the agreement. The court rejected votes cast contrary to the language of a *valid* provision of the agreement. Here I have concluded that the part of the alleged agreement calling for the granting of an irrevocable proxy by the two voting trustees was invalid because unauthorized. Thus an irrevocable proxy did not form any part of a valid pooling agreement. The difference in legal operation and effect is manifest.

I conclude, therefore, that the socalled breach of contract, if any, does not and should not prevent this court from granting plaintiffs relief by way of a recognition that the proxy was revoked.

Defendants also contend that the petition to review should be dismissed because the plaintiffs come into court with unclean hands. Defendants assert that the plaintiffs' unclean hands consists of their repudiation of their contractual covenants. This defense, assuming its appropriateness in *Section* 31 proceedings, is essentially the same as the defense previously discussed. Whatever rights defendants may have, I do not believe they can, by virtue of this defense, prevent plaintiffs, voting trustees, from revoking a proxy which, if otherwise irrevocable, was given without authority. Plaintiffs as trustees have a duty to operate within the agreement. It follows that the doctrine of unclean hands will not prevent the granting of relief in this case.

It is conceded that if the proxy in question was properly revoked the "Brady Slate" rather than the "Norton Slate" was duly elected. I declare the "Brady Slate" of directors duly elected.

Counsel should also resolve any pleading questions remaining in the light of this decision.

Order on notice.

### On Motion for Reargument

Defendants filed a motion for reargument advancing a new theory as to why the proxy involved was not revoked. They now assert that the voting trustees as such had a meeting and determined how the stock was to be voted at the stockholders' meeting under review; that in the absence of another meeting at which a majority of the voting trustees voted to nullify the previous decision, the action continued valid; there having been no such meeting, they say that the proxy given by the Bradys as voting trustees, in accordance with the determination of all of the voting trustees, remained valid.

Plaintiffs challenge the defendants' motion on several grounds but I think it necessary to consider only one.

As I evaluate the evidence, the Bradys as voting trustees gave their proxy as they had in previous years because they did not expect to be present. In the proxies they designated the persons for whom the stock was to be voted. This was not the result of any "meeting" of the trustees as such. They were acting individually when they gave the proxy. Indeed, the evidence presented by the defendants at the time of the trial as the basis for their contention that the proxy was irrevocable is inconsistent with a conclusion that this proxy was given as the result of a decision reached by the voting trustees acting as such under the duties imposed upon them by the voting trust agreement. This is so because defendants contended originally that the proxy was irrevocable because it was part of an agreement reached by the Bradys on the one hand, and Biel and Norton on the other. Some of the matters as to which the parties allegedly bargained would constitute an improper basis for these trustees to use to discharge their duties as voting trustees, e. g., adjusting individual and corporate claims. Thus the meeting was not a meeting of the trustees as such in so far as the proxy in question is concerned.

In so far as the proxy deals with the stockholders' meet-

ing under review, I conclude from the evidence that it was only the action of two of the voting trustees (one Brady acting through his brother) giving the proxy as a matter of convenience. It follows that even if the defendants' theory is legally sound it has no application under the present facts.

The motoin for reargument will be denied and final judgment entered in accordance with the opinion filed April 18, 1952.

Order on notice.