CLARKE MEMORIAL COLLEGE, a religious non-profit corporation of the State of Mississippi, Nicholas H. Wheless, Sr., Nicholas H. Wheless, Jr., Commercial National Bank in Shreveport, Shreveport, Louisiana, a corporation of the United States of America, Trustee under a trust agreement with Marilyn Hendrick Morehead and John A. Hendrick, 3rd, and Robert L. Berryman, partners trading under the firm name of "N. H. Wheless Oil Company", Plaintiffs,

v.

MONAGHAN LAND COMPANY, a Delaware corporation, and John J. Dunphy, David L. MacGregor, Charles S. Read, Donald E. Read and Walter F. Schmidt, Defendants.

Court of Chancery of Delaware.

New Castle.

Sept. 9, 1969.

James M. Tunnell, Jr., and Walter K. Stapleton, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Willis Meadows, Shreveport, La., for plaintiffs.

Richard F. Corroon and Richard E. Poole, of Potter, Anderson & Corroon, Wilmington, and David L. MacGregor, of Brady, Tyrrell, Cotter & Cutler, Milwaukee, Wis., for defendants.

DUFFY, Chancellor:

In this case the basic question is whether the trustees of a voting trust have the right to vote shares which they hold on a stockholders' resolution authorizing the sale of substantially all corporate assets.[1]

I

Monaghan Land Company ("Monaghan") was incorporated in Delaware in 1925. Its sole purpose is "To buy, hold and sell an undivided one-half interest in approximately twenty-four thousand acres of land, known as the Sicily Island Tract in the Parish of Catahoula, State of Louisiana." Monaghan acquired such an interest shortly after incorporation and still holds it. This interest in the Sicily Island Tract is Monaghan's only asset of substance.

Plaintiffs are Clarke Memorial College ("Clarke College"), a religious non-profit corporation of the State of Mississippi, and the partners of a partnership which transacts business under the name of "N. H. Wheless Oil Company." Defendants are Monaghan and its directors.

In 1962 Clarke College and other stockholders, together owning a majority of the outstanding shares of Monaghan, entered into a voting trust agreement under which a total of 1157.03 shares were transferred to five voting trustees. The relevant provisions of the voting trust agreement are considered hereafter.

The shares of Monaghan are held as follows:

| Record Holder | No. of Shares | Per Cent |
|---|---|---|
| Voting Trustees | 1157.03 | 52.09 |
| Wheless | 950.99 | 42.82 |
| Other Individuals | 112.98 | 5.09 |
| Total | 2221.00 | 100.00 |

Included in the shares transferred to the Trustees were 190 owned by Clarke College, which was 8.55% of the 2221 outstanding shares. Clarke College and Wheless, two of the plaintiffs, together hold 51.37% of Monaghan's outstanding shares.

At the annual meeting of Monaghan stockholders held on November 20, 1967, stock was represented as follows:

| | |
|---|---|
| Shares held by Trustees of the Monaghan Voting Trust | 1,157.03 |
| Shares held by the N. H. Wheless Oil Company | 950.99 |
| Shares present by proxy of John J. Dunphy | 110.16 |
| Total | 2,218.18 |

1. A Delaware corporation may sell all or substantially all of its assets on terms approved by its board of directors, when authorized "by the affirmative vote of the holders of a majority of the stock issued and outstanding having voting power." 8 Del.C. § 271.

At the meeting the following resolution was proposed:

"RESOLVED, that the Directors of Monaghan Land Company are hereby authorized to sell all of the Company's real estate upon such terms and conditions, and for such consideration, as the Directors deem expedient and for the best interests of the corporation, except that the sale price, after deduction of brokers' commission, if any, shall not be less than $2,400,000."

Wheless voted its shares against the motion; the shares held by the Trustees and those proxied to Mr. Dunphy were voted for it. Thus, the resolution was adopted by a vote of 1267.19 for and 950.99 against.

The President of Clarke College, Dr. W. L. Compere, attended the meeting as President of the College, as voting trustee, and as President of Monaghan. He stated that the College was opposed to the motion and that the Trustees of the voting trust did not have authority to vote on the resolution. But a majority of the Trustees decided to vote for the resolution and that vote was accepted at the meeting. If, however, the shares of Clarke College had been voted against the resolution it would have lost by a vote of 1077.19 for and 1140.99 against.

The next day Monaghan's Board of Directors adopted a resolution reading in part:

"RESOLVED, that the President and Secretary are authorized and directed to sell all of the Company's real estate upon such terms and condition as they deem for the best interests of the Company and its stockholders, provided that the sale price, after deduction of brokers' commission, if any, shall not be less than $2,400,000;

"FURTHER RESOLVED, that the said officers may enter into listing agreements, options, contracts for sale, and other agreements which may be incidental to the effecting of such sale;

"FURTHER RESOLVED, that the said officers may, through the Company's attorneys and such other attorneys as may be needed, commence partition proceedings in order to partition the Company's one-half interest in its real estate, if they conclude such action to be desirable, either in connection with efforts toward sale or as an alternative method of protecting the company's interests."

On January 26, 1968 plaintiffs began this action seeking injunctive relief against the sale or partition of the undivided one-half interest in the Sicily Island Tract. On November 18, 1968 the Board of Directors of Monaghan adopted a resolution directing corporate officers to solicit offers for purchase of up to 20 percent of Monaghan's interest in the Tract. Shortly thereafter the voting trust certificate holders met and passed resolutions (1) directing the Trustees to vote the voting trust shares to authorize the directors to sell all the Company's real estate, and (2) amending the voting trust to add the following sentence to paragraph 3 thereof:

"The trustees' right to vote specifically includes but is not limited to voting on any resolution concerning any aspect of the sale of all or substantially all of the company's real estate."

Clarke College voted against both of those resolutions.

At the annual meeting of Monaghan stockholders, convened on the same day, the following resolution was proposed and adopted over the objection of Clarke College and Wheless:

"Now, therefore, to reaffirm the said 1967 resolution and to adopt a new resolution, be it resolved that the directors of Monaghan Land Company are hereby authorized to sell all of the company's real estate upon such terms and conditions and for such consideration as the directors may deem expedient and for the best interests of the corporation except that (a), the sale price after deduction

of broker's commission, if any, shall not be less than $2,400,000, and (b), such authorization is not intended to affect or limit the power of the directors to sell without stockholders' approval less than all or substantially all of the company's real estate and in the event that the directors sell less than all, or substantially all of the company's real estate pursuant to their power as corporate directors, then the directors are authorized to sell the remaining real estate that the company owns provided that the price at which such remaining real estate is sold shall cause the company to realize a remuneration in the aggregate equal to not less than $2,400,000 for the sale of all of the company's real estate."

The shares held by the voting trustees were voted for the resolution. As in the 1967 resolution, if the shares of Clarke had been voted against, the resolution would have been defeated.

Plaintiffs allege that: (1) a sale of Monaghan's interest in the Sicily Island Tract, either in a single transaction or in series, will terminate the only business in which the Corporation is authorized to engage and will place it in a position where "the only practicable course" will be to dissolve its legal existence; (2) the voting trust agreement did not confer upon the Trustees the power to vote upon a proposal to sell Monaghan's interest in the property; and (3) the resolution which attempted to amend the voting trust agreement is ineffective because the agreement does not authorize such an amendment without the unanimous consent of all certificate holders. Plaintiffs also allege that sale of twenty per cent of Monaghan's interest is part of a plan to sell the entire interest through a series of sales and such a sale of the entire interest constitutes a violation of § 271.

This is the decision on defendants' motion for judgment on the pleadings.[2]

## II

In its narrowest context a voting trust is an agreement between stockholders on one side and a trustee on the other whereby rights to vote the stock are transferred to and vested in the trustee. 8 Del. C. § 218. A stockholder who deposits his stock in a voting trust parts with his voting right but retains beneficial ownership of the stock. Thereafter the depositor and the trustee are each a stockholder for certain purposes but neither is a stockholder for all purposes. Application of Bacon, 287 N.Y. 1, 38 N.E.2d 105 (1941). A substantial right retained by the depositor is the right to be revested with legal title to the stock at the termination of the voting trust agreement. Jesser v. Mayfair Hotel, Inc., Mo.Sup., 316 S.W.2d 465 (1958).

The established policy of our law supports a voting trust and, apart from limitations imposed by statute or public policy, the parties to such an agreement may adopt any provisions they want as to substance or mechanics. Scott v. Arden Farms Co., 26 Del.Ch. 283, 28 A.2d 81 (1942).

The powers and obligations of trustees of a voting trust must be ascertained from the terms of the voting trust agreement as a whole and not from reading one provision to nullify another. Brady v. Mexican Gulf Sulphur Co., 32 Del.Ch. 372, 88 A.2d 300 (Ch.1952); Chandler v. Bellanca Aircraft Corporation, 19 Del.Ch. 57, 162 A. 63 (Ch.1932); 5 Fletcher Cyclopedia Corporation (perm. ed.) § 2091.1. Thus, to determine whether the action of the Trustees in voting for the sale of assets was within their powers, we look to the agreement establishing the trust.

2. On October 25, 1968 the Court filed an opinion deciding defendants' motion for judgment on the pleadings but that was withdrawn because of a misunderstanding as to defendants' position. Thereafter the parties filed additional pleadings and briefs and reargued the issues.

Before discussing the issues I should say that plaintiffs do not challenge the validity of the voting trust nor do they allege any irregularities in its administration or the formalities with which the Trustees' vote was counted and cast. The issue is entirely one of power to do validly what the Trustees did in fact.

We begin with the undisputed proposition that in order for the corporation to sell its entire interest in the Sicily Island Tract, compliance with § 271 is required. In short, there must be stockholder approval because that interest represents all or substantially all of Monaghan's assets.

Defendants argue that stockholder approval was given at the meeting on November 20, 1967 when the Trustees voted the stock in favor of the sale resolution. This argument is based largely on paragraph 3 of the agreement, which grants to the Trustees:

"the exclusive right to vote all shares of stock held by them * * * at all meetings of the Stockholders of the Company and in all proceedings where the vote or written consent of Stockholders may be required or authorized by law."

Decision of the Trustees is to be determined by majority vote. Defendants say the language is comprehensive, granting all right to vote all shares in all proceedings requiring stockholder consent.

Plaintiffs argue that valid approval was not given for several reasons. First, they say that the Trustees are not authorized to vote the stock on a § 271 question and, accordingly, Clarke College's shares were not voted on November 20, 1967. There is a persuasive body of law which holds that broad generic language will not be construed to include the power to consent to destruction of the stock deposited under a voting trust agreement. See, for example, Application of Bacon, supra; 5 Fletcher Cyclopedia Corporations (perm. ed.) §

2091.1; and 159 A.L.R. 1070. But plaintiffs' reliance thereon is misplaced because they have not shown that the sale of assets as a matter of law will destroy the stock or legally terminate or compel dissolution of Monaghan.

A sale of assets does not constitute a dissolution or necessarily call for a liquidation of a corporation. Goldman v. Postal Telegraph, 52 F.Supp. 763 (D.Del.1943). Plaintiffs tacitly concede this but argue that the "facts" are such as to compel dissolution. But the compulsion which is argued is economic, that is, that which would operate upon a shareholder in determining how he should vote on a dissolution question put to stockholders. That is irrelevant here. I say this because "practical alternatives" to dissolution (based upon income tax considerations, for example) are a matter of stockholder choice. In short, the Court cannot say as a matter of law that dissolution will follow a sale of assets. Alcott v. Hyman, 40 Del.Ch. 449, 184 A.2d 90 (1962). It may be wise but it does not follow that it is compulsory.

As I have written in a prior opinion, if as a result of the proposed sale the stock deposited with the Trustees were to be destroyed, or if corporate dissolution were to follow as a matter of law, or if the voting trust were to terminate, then I would have a different view of the right of the Trustees to vote on the sale resolution. That opinion was withdrawn because defendants did not concede that any such result would follow, and I am now persuaded by their argument because plaintiffs have not shown that any such result will follow as a matter of law.

Second, plaintiffs argue that the Monaghan stockholders were not asked to approve a specific sale as required by § 271 but were asked to empower the directors to bring about a sale on terms not having stockholder approval. In my judgment, § 271 does not require shareholder approv-

al prior to Board action. Hence approval by the stockholders of a sale "upon such terms and conditions and for such consideration," not less than $2,400,000, as the directors might subsequently determine to be in the best interest of the corporation satisfies the statute. As Vice Chancellor Short said in Dowling v. Bonneville, Ltd., C.A.1688, 1/14/63 (unreported), "the propriety of the procedure here followed is tacitly recognized in Robinson v. Pittsburgh Oil Refining Corp., 14 Del.Ch. 193, 126 A. 46." It is true, as plaintiffs argue, that the present statute requires at least "20 days notice containing notice of the proposed sale." But, significantly, the statute does not require notice of the *terms* of the proposed sale.

■ Third, plaintiffs argue that the parties did not intend for the Trustees to have authority to liquidate the only business in which the corporation was authorized to engage. This, of course, requires a construction of the agreement and consideration of the rule of law that, absent a clear showing of authority, trustees cannot vote for the sale of corporate assets. Henn, Corporations, § 199 (1961). Cf. Re Firstbrook Boxes Ltd., 1 D.L.R. 92 (1936).

Monaghan had been organized for some thirty-seven years when the parties agreed to the voting trust. Its only purpose is to "buy, hold and sell" the half interest in the Sicily Island Tract. This is emphasized, and development of the property is implicitly prohibited by paragraph 9 of the charter, which states:

"The directors of this corporation shall have no power other than the right to acquire, hold, and sell the land referred to in Paragraph 'THIRD' of this certificate of incorporation, and

shall have no authority or power to incur obligations on behalf of the company to mortgage the land, and may incur only such obligations as are necessary to hold and sell the land, such as the cost of preservation, the payment of taxes, and things of that nature."

I agree with defendants' argument that, in this context, Monaghan is a specialized venture, with specific and limited corporate objectives. And such objectives are not limited to buying and holding the Tract. Since the buying was done about 1925, it is more precise to say that those objectives are not limited to "holding" the Tract. "Sell" is also included as a corporate purpose. It is against that background that the voting trust agreement must be read. And it is against that background that the parties therein gave the Trustees (in paragraph 3) the right to vote "all shares," at "all meetings" and in "all proceedings" where stockholder consent is required by law:

I must say that I am reluctant to imply powers in voting trustees which may lead to organic changes of the kind which plaintiffs argue. But under the special circumstances of this case the pertinent language employed by the parties is so sweeping that it admits of no other reasonable alternative.[3] I conclude that defendants have shown that the Trustees may vote for the sale of corporate assets under § 271. It follows that they validly did so on November 20, 1967.

### III

■ Finally, I turn to plaintiffs' attack upon the resolution of the Board of Directors, and there is merit to this. Plaintiffs say that delegation by Monaghan's Board

3. At this point I should recognize plaintiffs' argument based upon language in the agreement which states the purpose thereof is to "assure continuity and stability of policy and management of the Company." That purpose is directed to control of the Corporation, not retention of its assets.

to its President and Secretary to determine whether a sale would be made, and if so upon what terms, was a violation of § 271 and of the stockholders' resolution empowering the Board to sell. Defendants argue that such delegation was proper because plaintiffs do not allege that the assets had a value in excess of the $2,400,000 minimum price fixed by the stockholders and the directors. But the Board's resolution is broader than the mere question of price; it authorizes the two officers to fix "terms and conditions" as well. Those terms and conditions might include when and how the price is to be paid, financing by the seller, and so on. And what the officers deem to be in the best interest of the Corporation is not necessarily what the Board of Directors may decide is in its best interest.

Defendants also contend that the resolution is valid because 8 Del.C. § 141(c) authorizes delegation of directors' powers to two or more directors.[4] That is not relevant because the delegation here was to *officers,* not a committee of directors. And there is no showing that such officers are and must continue to be Board members.

In my judgment the resolution was an invalid delegation by the Board of Directors of the authority and responsibility conferred on it by the stockholders. It is not necessary to consider whether the resolution also violates § 271. Compare Field v. Carlisle Corporation, 31 Del.Ch. 227, 68 A.2d 817 (1949). It follows that the resolution was legally ineffective.

* * *

In view of the conclusions I have reached, it is not necessary to consider other arguments of the parties.

4. 8 Del.C. § 141(c) states:
"The board of directors may, * * * designate * * * committees * * * consist[ing] of two or more directors * * *. Any such committee, to the extent provided in the resolution, * * * may exercise the powers of the board * * * in the management * * * of the corporation * * *."