EDWARD W. COON, Plaintiff, *v.* NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD, Defendant.

Supreme Court, Jefferson County, September 29, 1925.

Insurance — fire insurance — action to set aside appraisal agreement
and award made thereunder and to recover on fire insurance policies —
defendant's policy provided that in event of disagreement loss should
be " ascertained by two competent and disinterested appraisers "
selected by insured and company respectively — appraisers empowered
to designate " competent and disinterested umpire "— appraiser named
by insurance company not disinterested — appointment of appraiser
and award set aside — award inadequate. .

In an action to set aside an appraisal agreement and the award made thereunder,
and to recover on fire insurance policies carried by defendant insurance company
on plaintiff's cheese storing and cold storage plant and the appurtenances
connected therewith, said appraisal agreement and the award made thereunder
pursuant to the terms of defendant's policy which recited that, in the event
of a disagreement as to the amount of a fire loss, said loss should be " ascer-
tained by two competent and disinterested appraisers " selected by the insured
and the company, respectively, who were to designate " a competent and
disinterested umpire " to whom said appraisers were to submit their differences
as to the amount of the fire loss, should be set aside, where it appears that the
appraiser designated by the insurance company was brought forward as a
contractor and builder, whereas at the time of his appointment and for years
preceding he had not been a contractor and builder, but had been in the service
of insurance companies and adjusting organizations during much of that time,
since by reason of said close and continuing relationship to the insurers and
the adjusting agency involved in this loss, it could not be said that he was
substantially indifferent in thought and feeling between the parties.  On the
contrary, he was a professional appraiser working in the interests of insurance
companies and their agents in the adjustment of fire losses.

Moreover, the award of the appraisers and the umpire did not give the plaintiff
the recovery to which he was entitled and it should be set aside as inadequate.

ACTION to set aside an appraisal agreement and the award made
thereunder and to recover on fire insurance policies.  .

*Cobb, Cosgrove & Kimball* [*Wilbur A. Porter* and *Harold L.
Hooker* of counsel], for the plaintiff.

*Ainsworth, Sullivan, Wheat & Archibald* [*Nelson R. Pirnie* of
counsel], for the defendant.

DEVENDORF, J.  The plaintiff on April 23, 1921, was the owner
of a large cheese storing and cold storage plant and certain build-
ings and appurtenances connected therewith situate at Cape
Vincent, Jefferson county, N. Y.  On that date such plant and
the major portions of the buildings and equipment were destroyed

by fire. At the time plaintiff held fire insurance policies in several companies amounting in the aggregate to $125,000. Previously he had been carrying $150,000. Among them were two five-year standard form policies issued by the defendant, taking effect October 21, 1916, and September 8, 1917, respectively; the former for $10,000 and the latter for $25,000.

Each of said policies contained this provision: " In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss."

After the fire the plaintiff took certain steps to realize on such insurance contracts with the defendant and the other insurance carriers. For that purpose he visited Syracuse May twelfth following the fire and met certain representatives of the companies and also of the general adjustment bureau.

At that time the defendant was represented by this general adjustment bureau through Mr. Kilpatrick. The meeting or conference was organized by appointing Mr. Carothers (also a representative of an insurance company) chairman, who said in substance to plaintiff, " Mr. Coon, you don't know anything about the values of the buildings and we don't and the proper thing to do is for each side to choose a disinterested appraiser and let them adjust the loss on the buildings," and said that the insurance companies would take as such Fred G. Millard, a contractor and builder in Syracuse. After more or less discussion Mr. Coon submitted the name of Alton T. Foster of Watertown.

It appears the parties had proceeded thus far without either an agreement or disagreement as to the amount of loss sustained on the buildings. At that time the agreement for appraisal (Exhibit 13) was signed, appointing said Foster and Millard appraisers. On the eighteenth of May and before there had been any apparent disagreement between them, that being the date they subscribed and took their oath of office, they selected and appointed Mr. H. I. Starkweather of Carthage, N. Y., to act as umpire. The two appraisers thereupon took up the work of determining the insured's loss. They with the umpire on August 10, 1921, fixed the award to plaintiff at $57,670.19.

The plaintiff, not satisfied with this award and claiming that his

actual damage far exceeded the amount of it, has brought this action in equity to set aside such appraisal agreement and award and then to recover under said policies the proportion of his actual loss and damage which defendant's policies bore to the total insurance carried by plaintiff upon the property in question.

Plaintiff claims that the defendant and its agent, the general adjustment bureau, were guilty of fraud and fraudulent concealment in bringing about the agreement for the appointment of Millard as such appraiser; that he was unknown to plaintiff and was not a contractor and builder at Syracuse or elsewhere but was a professional appraiser in the employ of defendant and other insurance companies and said adjustment bureau in making appraisals and estimates of fire losses and had been continuously so engaged for a period of years; that for such services he received large sums of money from said companies and bureau and was not a disinterested appraiser and was biased, unfair and interested in serving said insurance companies and by reason of his long experience was able to dominate and control the appraiser named by plaintiff.

There are also further allegations of fraud and unfair dealing in the appointment of Starkweather as umpire who it is claimed by plaintiff was not disinterested but previously had worked with Millard in fire losses and was unfair and as a result the award was far below the amount of plaintiff's actual loss by reason of the fire.

There is no question in the case but what the fire was an honest one and that plaintiff for a long time had carried fire insurance on this property to the amount of $125,000 or more.

The property covered by said policies consisted of a warehouse one hundred and thirty-one by forty feet, three stories high, with a one-story extension of the same width and fifty-one feet long. This was known as building No. 1. Building No. 2 consisted of a warehouse ninety-eight feet long by forty feet six inches wide and four stories high. No. 3, a refrigerating plant; No. 4, boat house; No. 5, garage; No. 6, garage; and No. 7, a paraffine and fan building sixty-three feet long by twelve feet wide.

Buildings Nos. 1, 2 and 7 were substantially destroyed by the fire. Building No. 3 was damaged to some extent.

At the time of the fire the plaintiff, who resided in Philadelphia, Penn., had cheese worth approximately $250,000 in storage in the building.

The first question to be considered in this case is as to the appraisers. Was Millard disinterested? Were his relations with the adjustment bureau and the insurance companies such that

he could and would act freely without favor or fear? They are disclosed to some extent by the items contained in Exhibit 45. This gives a record of Millard's insurance company activities for a ten-year period prior to 1921. It contains a list of cases in which he acted as appraiser or estimater for the general adjustment bureau and other fire insurance companies not represented by it during those years. It shows a total of 556 appraisals and 205 estimates and that he received for such services $23,027.20, to which may be added his compensation in this case of $2,608.43.

The proof shows not only that Millard at the time of his appointment and for many years preceding had not been a contractor and builder but had been in the service of the insurance companies and their adjusting concern during much of that time. That he was not a disinterested appraiser is apparent. For years he had been associated with the insurance companies and their representatives. During this long period he received substantial sums of money from them to compensate him for his work and for representing them at those many appraisals and estimates. Undoubtedly he rendered satisfactory returns for his compensation. Otherwise he would not have been continuously designated by the insurers. It should not have been stated directly or indirectly by the defendant, its agents or associates that Millard was a contractor and builder. His name should not have been suggested with or without representations because of his previous employment by the insurers. As to his relations with the insurance companies and their agents there was a deceptive silence as to his true position with them. He was to perform a judicial duty. Honesty, disinterestedness and competency were his qualifications. His relations with the insurance companies disqualified him from acting in that capacity. (*Produce Refrigerating Co.* v. *Norwich Union Fire Ins. Society*, 91 Minn. 210.)

The appraisers should be disinterested, not only without pecuniary interest, but impartial, fair, openminded and substantially indifferent in thought and feeling between the parties and without partisanship and bias either way. (*Young* v. *Ætna Ins. Co.*, 101 Maine, 294.)

The insurance contracts say in the event of a disagreement as to the amount of loss the same shall be ascertained by *disinterested appraisers.* This means some one who is not biased or prejudiced. (*Bradshaw* v. *Agricultural Ins. Co.*, 137 N. Y. 137.)

Disinterested is the equivalent of not interested and has been defined as follows: Not having any interest in the matter referred to or in controversy (*Ætna Ins. Co.* v. *Stevens*, 48 Ill. 31); free from prejudice or partiality (*McGilvery* v. *Staples*, 81 Maine, 101; *Hasceig* v. *Tripp*, 20 Mich. 216); impartial or fairminded (*Territory* v. *Leary*,

8 N. M. 180); not biased or prejudiced (*Brock* v. *Dwelling House Ins. Co.*, 102 Mich. 583; *Bradshaw* v. *Agricultural Ins. Co.*, 137 N. Y. 137); without pecuniary interest (*Gray* v. *Middletown*, 56 Vt. 53; *Chase* v. *Rutland*, 47 id. 393); having no prospect of gain or loss (*State* v. *Easterlin*, 61 S. C. 71); indifferent (*Wolcott* v. *Ely*, 2 Allen [Mass.], 338); not previously interested (*National Fire Ins. Co.* v. *O'Bryan*, 75 Ark. 198); not related to (*Jewell* v. *Jewell*, 84 Maine, 304); superior to private regards (*Wolcott* v. *Ely*, supra); free from all interest (18 C. J. 1140); and I will add not in the employ of either party to the controversy.

Millard's position relative to this appraisal under consideration falls within the scope and is defined in more than one of the above cases. He was undoubtedly a professional appraiser working for and retained hundreds of times by insurance companies and their agents to look after their interests in fire loss appraisals. He was not indifferent, not without pecuniary interest, not without a prospect of gain or loss, but was in a close and continuing relationship to the insurers and the adjustment agency. He was experienced and trained, competent of course, but from the sentiment of past service and hope that it continue, his position presumably was that of an advocate rather than of a disinterested appraiser. I think the evidence bears out this view of the situation.

I have had no difficulty in arriving at a decision that the appointment and award should be set aside. In reaching that conclusion no consideration is given to the selection or specific actions of the umpire. Sufficient to say Millard was the power in the affair and should not have undertaken to act where the contract and the law provides for impartial, unbiased, disinterested and fairminded action. It might be mentioned, however, that of 103 decisions made by the umpire he agreed to a cent with Millard in 92 of them.

Concededly Starkweather's part was not so important or far-reaching as that of the appraisers. Comparatively he did but little and the great part of that was to approve of Millard's figures when he and Foster did not agree. That Millard was the dominant force in the appraisal is evident. Whether right or wrong he was not a disinterested part of this quasi judicial machine.

To determine the insured's loss is not so easy. The record comes to me from a lengthy trial conducted by Mr. Justice EMERSON as official referee but undecided at his death; it is voluminous. To master the facts is extremely difficult. However much time we give it there may not be exact justice, too much or too little may be allowed here and there, but juries and courts are not and never will be infallible or always literally accurate, especially in fixing the amount of a claim based on unliquidated damages.

Surrogate's Court, Kings County, January, 1925.      [Vol. 126

The defendant insured the plaintiff to the extent of the actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage as provided by the policies against all direct loss or damage by fire to an amount not exceeding $35,000.

As stated, there was concurrent insurance to the amount of $90,000. Hence, defendant by its policies became obligated to pay thirty-five one-hundred-twenty-fifths of any loss sustained within the terms of the policies.

In my opinion the award of the appraisers and umpire did not give the plaintiff the recovery to which he was entitled. I am not sure that I am giving him the full benefit of his contracts but the evidence is so conflicting and crosses lines so acutely that in harmonizing it as much as possible too much may have been allowed for depreciation or salvage and too little for value and replacement.

However that may be, I have fixed the plaintiff's total loss at $86,033.64, and he to recover herein the proportion thereof which said policies bear to the total insurance carried by plaintiff on said property. Interest to be computed on such loss from sixty days after due notice and proof of loss.

Findings and conclusions will be prepared accordingly and judgment will follow against defendant, with costs.