BERT C. SCOTT, TRUBEE B. SCOTT and BANK OF CALIFORNIA NATIONAL ASSOCIATION, as Trustee of the trusts created by BERT C. SCOTT and TRUBEE B. SCOTT,

*vs.*

ARDEN FARMS CO., a Delaware corporation.

*New Castle, August 27, 1942.*

284

*Hugh M. Morris* and *Alexander L. Nichols,* of the firm of Morris, Steel, Nichols & Arsht, for complainants.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, and *John D. Van Cott,* of the firm of Milbank, Tweed & Hope, of New York City, for respondent.

THE VICE-CHANCELLOR: The respondent is the surviving corporation of a merger of one Maryland and three Delaware corporations. The merger became effective August 1, 1940. For some years prior to the merger, complainants owned shares of the preferred stock of respondent and also voting trust certificates for shares of its common stock which they had deposited subject to the provisions of a voting trust agreement. Complainants duly objected to the merger and demanded payment of the preferred stock owned by them, and of the common stock represented by the voting trust certificates. The parties failed to come to an agreement as to the value of the stock. On October 30, 1940, complainants demanded an appraisal under *Section* 61 of the *Delaware Corporation Law* by three disinterested appraisers, and designated John L. Davis of San Francisco as one appraiser. On November 27, 1940, respondent designated J. Sellers Bancroft of Wilmington as the second appraiser, stating that the appointment was without waiver of or prejudice to its rights in respect of the appraisal, and particularly its right to object to an appraisal of the common stock. For a third appraiser, Davis suggested to Bancroft

the names of certain persons residing in California. Bancroft proposed several Delaware residents. Davis insisted that some resident of Los Angeles be appointed on the ground that "the properties, books and records of the company are in Los Angeles." Bancroft was equally insistent that a Delaware resident be named, on the grounds that "there might be definite advantages in holding the hearings where, if possible and if necessary, assistance from Delaware courts or Delaware attorneys would be readily available," and that Bancroft, in view of his duties here, could not very well "go out to California for an indeterminate stay." After the two appraisers had failed to agree upon another, complainants brought the suit to obtain the designation by this court of a third appraiser. Respondent denies that complainants have any right to an appraisal or payment on account of the shares of common stock for which they hold voting trust certificates. It further contends that the bill should be dismissed because Davis is not a "disinterested" person, within the meaning of the statute.

*Section* 61 *of the Delaware Corporation Law* provides in part as follows:

"Sec. 61. Consolidation or Merger; Payment for Stock of Dissatisfied Stockholder:—If any stockholder in any corporation of this State consolidating or merging as aforesaid, who objected thereto in writing, shall within twenty days after the date on which the agreement of consolidation or merger has been filed and recorded, as aforesaid, demand in writing from the corporation resulting from or surviving such consolidation or merger, payment of his stock, such resulting or surviving corporation shall, within three months thereafter, pay to him the value of his stock at said date, exclusive of any element of value arising from the expectation or accomplishment of such consolidation or merger. If within thirty days after the date of such written demand the corporation and such stockholder fail to come to an agreement as to such value of such stock, such stockholder may demand an appraisal of his stock by three disinterested persons, one of whom shall be designated by the stockholder, one by the directors of the resulting or surviving corporation and the other by the two designated as aforesaid and may serve written notice on such corporation designating therein one appraiser and requiring the corporation to designate a sec-

ond appraiser within thirty days from the date of service of such notice. If within thirty days from the date of service of such notice the corporation shall have failed to designate a second appraiser or if the two appraisers first designated shall fail to designate a third appraiser within thirty days from the designation of the second appraiser, such stockholder may apply to the Chancellor to designate a second and a third appraiser, or a third appraiser, as the case may be. The decision of the appraisers as to such value of such stock shall be final and binding upon the corporation and such stockholder. In case the value of such stock as so fixed by the appraisers is not paid to such stockholder within sixty days from the date of such decision and of notice thereof given to the corporation, the decision of the appraisers shall be evidence of the amount due from the corporation, and such amount may be collected as other debts are by law collectible from the resulting or surviving corporation. Upon receipt of payment in full of the value of such stock, such stockholder shall transfer his stock to the said resulting or surviving corporation, to be disposed of by the directors thereof, or to be retained for the benefit of the remaining stockholders. * * *"

Complainants contend that as holders of voting trust certificates they are stockholders within the meaning of the statute, and that in consequence, the rights and remedies which it provides are available to them. They say that their status as stockholders is limited only by the temporary loss of voting rights; and that they are not deprived of the option, which the statute gives to an objecting stockholder, "completely to retire from the enterprise and receive the value of his stock in money." *Chicago Corp. v. Munds, et al.,* 20 *Del. Ch.* 142, 149, 172 *A.* 452, 455. They cite authorities holding that a voting trust certificate holder is a "stockholder" for various purposes: *Chandler v. Bellanca Aircraft Corp., et al.,* 19 *Del. Ch.* 57, 162 *A.* 63 (application by a "stockholder" for the review of a corporate election, under *Section* 31 *of the Delaware Corporation Law*) ; *Cooney Co. v. Arlington Hotel Co.,* 11 *Del. Ch.* 286, 101 *A.* 879 (liability of a "stockholder" for unpaid consideration for his shares of stock, under *Section* 20) ; *United States Independent Telephone Co. v. O'Grady,* 75 *N. J. Eq.* 301, 71 *A.* 1040, 21 *L. R. A.* (N. S.) 732 (summary proceeding by a "stockholder" for winding up the affairs of an insolvent corpor-

ation, under a New Jersey statute). They also cite *In re Rogers*, 102 *App. Div.* 466, 92 *N. Y. S.* 465, which holds that the actual owner, and not the mere record owner of stock, is the proper person to assert rights under a New York statute to appraisal and payment of the stock.

The voting trust agreement in the present case contains the following provisions:

"Ninth. Until the termination of this Agreement and the actual delivery of stock certificates in exchange for Certificates hereunder, the Voting Trustees shall possess and shall be entitled in their discretion, not subject to any review, to exercise in person or by their proxy in respect to all said stock the right to vote thereon for every purpose, and to consent to or dissent from any corporate act of the Corporation as though they were the absolute owners of said stock; it being expressly stipulated that no voting right passes to others by or under the Certificates or by or under this Agreement or by or under any other agreement, expressed or implied.

"Without in any wise limiting the generality of the forgoing, the Voting Trustees are specifically authorized in the exercise of their sole and absolute discretion in respect of any and all stock of the Corporation subject to this Agreement to vote for or consent to: * * * any merger or consolidation of the Corporation with any other company and any reorganization of the Corporation; and to take any action with respect to any of the foregoing which any stockholder might lawfully take, and upon any such increase, reduction or reclassification of capital stock, reduction of capital or merger, consolidation or reorganization becoming effective, to make such surrender of the stock of the Corporation subject to this Agreement as may be proper or expedient and to receive and to hold under this Agreement in lieu thereof any and all stock issued in exchange for such surrendered stock, * * *."

Thus, the trustees are specifically empowered to vote for or consent to a merger, to surrender stock held by them when a merger becomes effective, and to receive and hold under the agreement all stock issued in exchange for stock surrendered. Such powers are inconsistent with the asserted right of the holders of the voting trust certificates to object to the merger and obtain payment of the stock. *Section* 61 provides that when a stockholder receives pay-

ment of the value of his stock, he shall transfer it to the surviving corporation. Complainants have no right under the trust agreement to compel the trustees to release the stock deposited with them so that complainants may comply with the statutory requirement. No infirmity in the powers of the trustees is apparent. The voting trust agreement was created under statutory warrant, *Section* 18 *of the Delaware Corporation Law, Rev. Code* 1935, § 2050; and "Apart from limitations imposed by statute or public policy, parties to trust agreements are at liberty to adopt any provisions either as to substance or mechanics as they may elect." *State ex rel. Crowder v. Sperry. Corp.,* 2 *Terry* (42 *Del.*) 84, 15 A. 2d 661, 664; *Chandler v. Bellanca Aircraft Corp., et al., supra.* The voting trustees determined to vote in favor of the merger and did so vote at the meeting of respondent's stockholders held for the purpose of considering and acting upon the merger agreement. Hence, the common stock in which complainants claim equitable interests under the voting trust agreement were lawfully voted in favor of the merger.

Although voting trust certificate holders may, for some purposes, exercise the rights of stockholders with respect to the shares held in the voting trust, they are manifestly bound by the acts of the voting trustees, done in good faith and within the scope of their authority, in carrying out purposes of the trust. To hold otherwise would deny effect to the trust agreement. In the Delaware and New Jersey cases cited by complainants, voting trust certificate holders were treated as stockholders, but without impugning any of the purposes of the voting trusts. Here, to permit voting trust certificate holders to object to the merger, notwithstanding the authorized act of consent of the trustees, would tend to defeat express purposes of the trust. The New York case cited is inapposite. No voting trust agreement was involved and it does not appear that the record owner was authorized by the actual owner to act in the situation. Hence,

complainants' objections to the merger, in so far as they are based upon ownership of interests in common stock, must be treated as nugatory. Of course, this does not affect their objections as preferred stockholders, and their rights to an appraisal and payment of their preferred stock.

Respondent contends, however, that complainants' designation of Davis as an appraiser was a nullity because he is not a "disinterested" person within the meaning of the statute. Davis is a member of a firm of investment counselors retained by complainant Bert C. Scott to advise with respect to the investment portfolios of the complainants. The firm was retained at a fixed monthly compensation from April 15 to August 15, 1940, and again from October 1, 1940 to February 28, 1941. Scott's dealings were primarily with Davis.

The complainants Scott originally gave proxies to vote in favor of the merger at the stockholders' meeting of July 2, 1940, called to consider it. Prior to the meeting the proxies were revoked, and all of the complainants objected in writing to the merger. On August 13, 1940, they made written demand for payment of their stock. Davis acted on behalf of complainants in negotiating with respondent to arrive at an acceptable price for the stock, and conferred with one of respondent's officers on September 30, 1940. No agreement was arrived at. When complainants designated Davis as an appraiser in October, 1940, they agreed to compensate him for his time and disbursements, if he should not be compensated by respondent as a part of the appraisal proceedings.

At the hearing on demurrer, respondent objected to Davis as an appraiser, on account of facts appearing from the amended bill. The demurrer was overruled on the ground that respondent's conduct under the circumstances constituted a waiver of objection based alone upon the matters then urged as disqualifying him. The reasons for the

decision are stated in a memorandum letter which I wrote
to the solicitors, as follows:

"When notified of the designation of Davis in October 1940, re-
spondent had knowledge that he had acted on behalf of complainants
in an effort to come to an agreement as to the value of complainants'
stock. Notwithstanding this, it made no objection, but went ahead
with the proceeding, named a second appraiser, and only after the
two appraisers had failed to select a third, and after complainant had
brought this suit, did respondent indicate any dissatisfaction as to
Davis. It now urges that it did not know that Davis was in effect a
paid employee in the negotiations with it. The very fact that negotia-
tions of the kind which took place were conducted through someone
other than complainants themselves was enough to arouse the suspi-
cion that the negotiator was an agent acting for compensation, rather
than gratuitously. Consequently, if respondent's determination to ac-
cept or object to Davis as an appraiser hinged upon whether he was
acting gratuitously or for remuneration, the situation was such as to
warn respondent to inquire concerning this fact. It does not appear
that respondent did inquire or that it was in anywise misled by Davis
or by the complainants as to the relationship which existed between
the latter. This being so, respondent's failure promptly to object to
Davis, and its election to go forward with the proceeding should be
deemed a waiver of objection on the ground that Davis had been com-
plainants' agent, paid or unpaid.

"The agreement of one of the complainants to compensate Davis
for his time and disbursements in connection with the appraisal in the
event that these are not paid by respondent should not constitute a
cause of disqualification. It is only reasonable to suppose that some
such assurances would be necessary in order to engage the services of
any disinterested person as an appraiser.

"Respondent has suggested that it should be permitted to object
until the arbitration has begun, or until the parties have incurred ex-
pense or trouble in connection with it. The statute allows thirty days
for a corporation to name a second appraiser. Thus, before a second
appraiser is chosen, the corporation has ample time to decide whether
or not to object to the first appraiser on matters of which it is charge-
able with knowledge. To entertain such objections at any time before
the appraisal would serve no useful purpose, and would not be con-
sistent with the plain intendment of the statute to provide for a prompt
determination of the questions involved."

Authorities supporting the conclusion reached include
these: *Western Assur. Co. v. Hall Bros.,* 143 *Ala.* 168, 38

*So.* 853; *Pearson v. Barringer,* 109 *N. C.* 398, 13 *S. E.* 942; *Anderson v. Burchett,* 48 *Kan.* 153, 29 *P.* 315; *Frankfurth v. Steinmeyer,* 113 *Wis.* 195, 89 *N. W.* 148.

At the final hearing, other facts were proved concerning Davis and his relation to complainants. Prior to the revocation of the proxies which the complainants Scott had first given to vote in favor of the merger, Davis suggested that Scott "investigate the matter," recommended a firm of attorneys, and on behalf of Scott, sought the legal advice of these attorneys with respect to Scott's rights to object to the merger. After receiving the attorneys' advice "through Davis," Scott decided to revoke the proxies. Davis discussed with Scott the proposal he had made to respondent in September 1940. He also discussed "the financial setup of the company and probable values that" Scott "might receive out of an appraisal proceeding." In this connection, he gave Scott a detailed report in which he had computed an "Appraisal Valuation" of complainants' preferred stock and voting trust certificates for common stock.

*Section* 61 prescribes as a qualification of appraisers that they be "disinterested persons." The word "disinterested" as so used, plainly means something more than not having a pecuniary interest in the controversy; it connotes fair-mindedness, including freedom from actual or probable bias, prejudice or partiality with relation to the questions to be determined. Compare: *Krajewski v. Amalgamated Leather Cos.,* 4 *W. W. Harr.* 243, 151 *A.* 724; 27 *C. J. S., Disinterested, p.* 149.

The proofs warrant the inference that Davis considered that the merger would be disadvantageous to the financial interests of complainants, and that it was more desirable to seek an appraisal and payment of the stock than to accept what was offered by the terms of the merger agreement. It is apparent that Scott's determination to object to the merger was affected to some extent by Davis. Moreover, Davis formed and expressed an opinion as to the probable

values of the stock, or amounts which Scott might receive out of an appraisal proceeding. Davis' advice was rendered in a professional capacity, and for compensation. Although not now employed by Scott, his firm may again be retained in the future.

Complainants argue that the fact that Davis made estimates of value does not demonstrate bias or prejudice, because the estimates were based at least in part upon matters which should not properly be considered by appraisers acting under the statute, and were made without the opportunity of examining all of the pertinent facts. They further contend that the best way for Davis to retain the confidence of Scott is "to bring about a fair, reasonable and just appraisal which can withstand judicial scrutiny." It by no means follows from the facts that Davis would necessarily act unfairly in appraising the stock. But the risk that his judgment might be influenced, consciously or subconsciously, by his previous conclusions and recommendations, or by a tendency to attempt to justify them, is such that he should not be expected to act with the freedom of mind required. In consequence, he is not a "disinterested" person. *Kraft v. Tenningkeit,* 204 *Iowa* 15, 214 *N.W.* 562; *Conrad v. Massasoit Insurance Company,* 4 *Allen,* (*Mass.*) 20; 6 *C. J. S., Arbitration and Award,* 46 *pp.* 186, 187.

Complainants contend that respondent has waived its right to object to Davis on the grounds found to be disqualifying. They argue that the situation is substantially the same as that presented when the demurrer was overruled; that although respondent did not know the additional facts brought out by the testimony, it did know that Davis had represented complainants in attempting to negotiate with respondent, and hence, should have investigated the relationship between them before going forward by designating a second appraiser.

The facts that respondent knew seem to me wholly insufficient to make respondent chargeable with knowledge

that Davis had advised Scott, in effect, that he would fare better by an appraisal than by accepting the merger, and that Davis had computed the probable amounts which Scott might receive upon an appraisal. From the ruling on the demurrer it should not be inferred that respondent's knowledge that Davis had represented complainants imposed a duty to investigate the full extent of the past relationship of Davis and complainants, and all that had transpired between them, in order that respondent might object on grounds which such investigation might have disclosed. By the former ruling, respondent was held chargeable with knowledge of certain circumstances which are normally and usually present in a factual situation of the character actually known by respondent to exist. In contrast, complainants would now impute knowledge of matters which cannot reasonably be said to be usual concomitants of the known facts. The element of knowledge is found wanting, and hence, waiver is not established.

Respondent argues that "the designation of Mr. Davis, in view of his disqualification, was a breach of statutory obligation and an inequitable effort to secure unjust advantage," and that the bill should be dismissed. Neither the fact that Davis is disqualified, nor the particular reasons for his disqualification requires the conclusion that complainants acted in bad faith by designating him. On the contrary, the evidence persuades me to the view that complainants had no fraudulent purpose. However, since the person named as the first appraiser is disqualified, there is no occasion for the court to designate a third appraiser. Hence, the bill should be dismissed, without prejudice to any rights which complainants may have to proceed further to obtain an appraisal and payment of their preferred stock.

A decree accordingly will be advised.