**Schipper & Block, Incorporated, an Illinois Corporation, Plaintiff-Appellant, v. Carson Pirie Scott & Company, an Illinois Corporation, Defendant-Appellee.**

Gen. No. 68–87.

Third District.

March 20, 1970.

Rehearing denied April 16, 1970.

STOUDER, P. J., dissenting.

Leiter, Newlin, Fraser, Parkhurst & McCord, of Peoria, and Wilson and McIlvaine, of Chicago, for appellant.

Davis, Morgan & Witherell, of Peoria, and Sidley and Austin, of Chicago, for appellee.

RYAN, J.

Plaintiff is the owner and lessor of a department store building which is leased to the defendant under a 99-year lease which commenced in 1914. It is a net lease with the lessee paying taxes and insurance on the property.

Based on an appraisal of the building and land acceptable to the lessor and lessee in 1914, the lease provides for a rental figure of 6% of the appraised value of the land and buildings at the beginning of the period, plus 1% of the appraised value of the buildings. This rent was fixed for ten years. The lease further provides for appraisals to be made for each succeeding 10-year period, with the same percentage rent formula to apply to the new appraisals. Under the lease, each party is required to appoint one appraiser, who must be competent, judicious and disinterested, and who is to appraise the value of the property involved in the lease. If the two appraisers cannot agree upon the value of the property, they are to select a third appraiser and the finding of the three appraisers, or a majority of them, shall be considered binding. In the case no two of the three appraisers agree upon the value, their appraisals shall be averaged.

The original lease requires that the appraisers answer two questions:

"1st. 'What, in your candid judgment, is the present fair cash value, as a whole, of the several lots, pieces and parcels of ground demised, including the buildings and improvements thereon?'

"2nd. 'What, in your candid judgment, is the present fair cash value, as a whole, of the buildings and improvements on several lots, pieces and parcels of ground demised?' "

In 1924, the lease was amended to provide that in making appraisals subsequent to 1934, the appraisers shall not take into account the then value of any permanent additions or improvements, as distinguished from repairs or replacements, placed upon the premises by the lessee and paid for by the lessee. It is further provided by that amendment that the appraisals of the building for rental purposes shall never be less than its stated value in 1914 which was $502,000.

In attempting to comply with the appraisal terms of the lease for the decade commencing in 1964, each party selected an appraiser. When these appraisers failed to agree on the value, they selected a third appraiser. The trial court found, among other things, that the defendant's appraiser and the third appraiser agreed and that such agreed figure controlled under the lease.

This action was brought by plaintiff to obtain a construction of the lease, to set aside appraisals made for the purpose of establishing the rent for the 10-year period commencing in 1964, and to have the rent established by the court. After a trial, the trial court entered a decree dismissing the Complaint for want of equity, from which this appeal is taken.

Of the issues presented for review, the more important are: whether one of the appraisers was disqualified because he was not disinterested as required by the lease; whether the appraisers had great latitude in construing the lease; whether the appraisals are invalid as a result of mistake, including mistake in the construction of the lease, and the nature of the relief to be granted if it should be determined that the appraisals are invalid.

■ For various reasons which are hereinbelow set forth, we feel that the decision of the trial court in this case must be reversed. First of all, the defendant's appraiser, Walter Kuehnle, was not disinterested as required by the lease. Plaintiff's objection on this point is well taken and should have been heeded by the trial court. Accordingly, his appraisal cannot be considered as binding under the lease whether standing alone or in conjunction with the third appraiser, or for purposes of averaging. The facts are that Kuehnle had appraised the department store building for the defendant to assist the defendant in securing a reduction in assessed value in 1960 and 1961, and again in 1964 at the same time the appraisal was being made under the lease. During the period 1959 through 1964, Kuehnle or his firm re-

ceived $34,100 compensation from the defendant for various services, exclusive of services in connection with the lease appraisal. The tax appraisals were signed by Mr. Kuehnle and filed with the Peoria County Board of Review. The purpose for taking an appraisal before the Board of Review is to establish as low a value as possible in order to obtain as low a real estate tax as possible. Furthermore, neither Kuehnle nor the defendant disclosed this fact to the plaintiff, and the fact was not discovered by the plaintiff until Kuehnle's deposition was taken in this suit. Thus, when Kuehnle was selected to appraise the property in conjunction with the lease, he had already formed preconceived opinions as to value under circumstances which militated in favor of low value and had made these opinions a matter of record, all without disclosure to the plaintiff.

The trial court in its order found that the appraisers were "qualified in their profession and were unbiased." In a supplemental opinion the trial court stated: "The only charge of bias made in the Complaint related to the appraiser Kuehnle and the thrust of the evidence was that having appraised the property on previous occasions he had a preconceived notion of their value. Having considered the cases cited, the court is not of the opinion that this was sufficient to disqualify Kuehnle from giving a disinterested opinion of appraisal nor would it cause him to be so biased as to require his opinion to be set aside or disregarded. It was evidence which went to the weight of his testimony and nothing else."

The prior relationship of the appraiser Kuehnle with the defendant and the property involved was not a matter that went to the weight of the testimony as the trial court's opinion stated. This relationship concerns his qualification as an appraiser. The terms of the lease provide: "No person shall be competent to act as an appraiser for either of said parties except it be a person

competent, judicious and disinterested." If such a relationship as Kuehnle had with the defendant and the property involved made him an "interested" person, then he was not competent to act as an appraiser by virtue of the provisions of the lease.

These provisions were special qualifications contained in the lease and govern the qualifications which the appraisers in this case must possess. We are not concerned herein with the general law relating to disqualification of appraisers, but with the special qualifications of the appraisers set forth in the lease. The cases of Giddens v. Board of Education, 398 Ill 157, 75 NE2d 286 and Sebree v. Board of Education, 254 Ill 438, 98 NE 931, which held that prior employment by a party involved did not disqualify an appraiser are not in point. In those cases the leases involved did not require that the appraisers be "disinterested."

Disinterested is defined as: "Not having any interest in the matter referred to or in controversy; free from prejudice, partiality; impartial or fair-minded; without pecuniary interests; not previously interested; not biased or prejudiced." 27 CJS 314. The term "distinterested" does not simply mean a lack of pecuniary interest but it requires the appraiser to be one not biased or prejudiced. Words and Phrases, Disinterested.

Bias and prejudice are conditions of the mind. City of Naperville v. Wehrle, 340 Ill 579, 173 NE 165; In re Adoption of Richardson, 251 Cal App2d 222, 59 Cal Rptr 323. Although the terms are often used interchangeably or together to indicate a single state of mind, they are not exactly synonymous. Littrell v. State, 22 Okla Crim 1, 209 P 184, 186. "Bias" in its legal acceptation, means only a leaning toward one of the parties rather than the other; and "prejudice" imports the formation of a fixed anticipatory judgment as contradistinguished from those opinions which may yield to evidence. "Prejudice"

41

means a prejudging of a case from any cause. It means a settled or fixed opinion. Words and Phrases, Prejudice.

■ Kuehnle by his prior appraisal of the property for tax purposes had prejudged the value of the property. He had formed a conclusion as to the value thereof prior to his appointment as an appraiser.

In Scott v. Arden Farms Co., 26 Del Ch 283, 28 A2d 81, the value of stock of dissenting stockholders was to be determined by appraisers who were "disinterested persons." One Davis had previously advised Scott, one of the dissenting stockholders, and had given Scott a detailed report in which he had computed an "appraisal valuation" of complainant's stock. For purposes of an appraisal proceeding to determine the value of the stock, Scott subsequently designated Davis as an appraiser. The court held that Davis was not a "disinterested" person. The language of the court at page 86 is quite appropriate in our case:

> "It by no means follows from the facts that Davis would necessarily act unfairly in appraising the stock. But the risk that his judgment might be influenced, consciously or subconsciously, by his previous conclusions and recommendations, or by a tendency to attempt to justify them, is such that he should not be expected to act with the freedom of mind required. In consequence, he is not a 'disinterested' person."

In Kraft v. Tenningkeit, 204 Iowa 15, 214 NW 562, the statute provided that the court shall appoint a commission of one or more of "disinterested" surveyors to locate lost, destroyed or disputed corners and boundaries. The commissioner appointed had previously acted, unknown to the plaintiff, for the defendant in making a survey of the premises in question. The court stated at page 563:

42

"The plaintiffs were entitled to have a commissioner appointed who had not formed or expressed an opinion in relation to the subject matter."

The court continued on the same page:

"May it be said that a commissioner, who, prior to his appointment, acted in the very matter for one of the litigants, is absolutely free and mentally untrammeled by his former findings and would be uninfluenced by his opinion based upon his prior investigations and mathematical calculations?"

██ ██ Many factors may indicate that an appraiser is not disinterested. Even factors which considered individually and standing alone might not indicate interest might combine to do so according to the circumstances of the case. Repeated employment as an appraiser for one of the parties, while not conclusive, may be evidence of a disqualifying interest. Farmers Conservative Mut. Ins. Co. v. Neddo, 111 Ind App 1, 40 NE2d 401, 408 (1942); Orr v. Farmers Mut. Hail Ins. Co. of Missouri, 356 Mo 372, 201 SW2d 952 (1947); Note, 104 ALR 563, 566 (1936). Concealment or failure to disclose facts which might cause the other party to question the appraiser's disinterestedness at the time of his appointment is evidence of bias. Coon v. Nat. Fire Ins. Co. of Hartford, 126 Misc 75, 213 NYS 407, 410–12 (S Ct 1925); Bradshaw v. Agricultural Ins. Co., 137 NY 137, 32 NE 1055 (1893).

██ The repeated employment of Mr. Kuehnle by the defendant, the substantial compensation that was paid pursuant to this employment, the nondisclosure of this employment by the defendant, the nature of this employment which was to secure a tax reduction by establishing a lower appraised value, and the preconceived opinion thus formed as to the value of the property in

question are all factors which combine to negate the condition of disinterest as required by the lease.

A second major error in this case involves the construction of the lease itself. The lease as amended requires that ". . . the appraisers . . . shall not take into account the then value of any permanent additions or improvements, as distinguished from repairs or replacements, placed upon said buildings by the lessee and paid for by the lessee; provided, however, that the appraisal of said buildings for rental purposes shall never at any time be less than the several amounts set forth on page 13 of said lease, reference to which is hereby had for greater certainty." The evidence disclosed that many changes had been made to the building by the lessee. The trial court allowed the appraisers complete discretion in construing the meaning of the lease as they saw fit with regard to these changes. This was error. The appraisers called for under the lease are neither judges nor arbitrators. Their function is to appraise value pursuant to the lease. They have no authority to construe the lease. In the event of disagreement or uncertainty, the court has the final authority to determine the legal significance and meaning of the language of the lease. Union Trust Co. v. Board of Education, 348 Ill 256, 180 NE 819 (1932).

In this case, both Kuehnle and the third appraiser, Newcombe, erred in misconstruing the meaning of the above-quoted language of the lease. They also erred in applying different methods of valuation to the building and the improvements. They further erred in their method of allocation of items as between repairs or replacements and permanent additions. They further erred as to their understanding of the meaning of the words "then value." A correct understanding and application of the lease is a condition precedent to a valid appraisal.

From the provisions of the original lease and the two questions therein which the appraisers are required

44

to answer, it is apparent that the appraisers' authority under the lease is to determine value and they are to determine the value of the various parts which they appraise "as a whole." They are given wide discretion in determining value but the lease does not give to the appraisers any authority to construe the terms of the lease. We think that the trial court erred in holding that "the appraisers had great latitude in construing the lease."

In Marceron v. Chevy Chase Services, Inc., 258 F2d 155, the lease provided that the rent shall be determined by a committee of appraisers whose appraisal shall be binding upon the lessor and lessee as to the question of rental value of the leased premises. The court said at page 158:

> "Here we are dealing with appraisers appointed solely to appraise value of real estate and its rental value. To be sure they had to make a preliminary or tentative interpretation of their instructions and powers as defined in the leases. But that does not carry with it power to do so with finality. The parties could have vested such final authority in third persons, but it is not to be implied from a grant of authority to appraise value.
>
> "Thus it appears that the appraisers' construction of the formulae can properly be reviewed by the trial court and by us. The appraisers' construction of the formulae, as distinguished from appraisal of value, being ultra vires, is clothed with no presumption of correctness. The trial court's affirmance of the appraisers' determination is likewise no obstacle to de novo construction in this court, first because the trial court's decision was based partly on an erroneous ground, namely that the appraisers' interpretation of their own charter of authority was conclusive on the parties; and second, because unlike

45

the question of land or rental value, it is one purely of law and involves only construction of a written instrument."

We think that the lease requires that the appraisers first value the property as it stands at the time of the appraisal, including all repairs, replacements, permanent additions and improvements. That is to say, that they arrive at a valuation "as a whole." Secondly, the appraisers must then deduct the "then value" of the permanent additions or improvements as distinguished from repairs and replacements. In arriving at the "then value" of the permanent additions or improvements, the appraisers must consider the additions or improvements as a part of the whole and not as separate and independent items standing alone and separate and distinct from the entire structure. If this is done, each part will have a value as it relates to the whole and the sum of the parts will not be found to exceed the whole.

We further feel that these appraisers erred in their determination of what was a repair or replacement as distinguished from what was a permanent addition or improvement. We believe that the lease clearly means that only those permanent additions or improvements which do not constitute repairs or replacements are to be deducted from the appraised value of the building. Thus, although a deduction would be in order for the then value of an item which was not a part of the original structure, consideration would have to be given to that portion or that part of such an item, if any, which constitutes repair or replacement of a part of the original building. Under the 1924 Amendment, repairs and replacements are not to be deducted from the appraised value of the whole building. Permanent additions and improvements are only to be deducted to the extent that they do not constitute repairs or replacements. It is the opinion of this court that the parties should reopen their negotiations under the lease and begin anew

46

the appraisal procedures called for in the lease under these guidelines. If disinterested appraisers are selected and these guidelines are followed, the rent can be determined under the lease and the court will not be required to either fix the value of the property or the amount of the rent.

█ █ The function of appraisers under a lease provision like the one involved in this case is limited to the determination of the value of the property. Appraisers are not arbitrators. Norton v. Gale, 95 Ill 533 (1880); Sebree v. Board of Education of Chicago, 254 Ill 438, 446, 98 NE 931 (1912). So long as the appraisers are not disqualified and act within the scope of their authority under the proper construction of the lease, their appraisal will be binding in the absence of mistake or fraud. The appraisers' ultimate determination of value will not be set aside merely because it might appear to a Court to be too high or too low, but it will be set aside (1) upon a showing of a fundamental mistake more than mere error of judgment, (2) disqualification of the appraisers, (3) fraud or (4) undervaluation such as to give rise to an inference of bad faith, partiality or constructive fraud. Union Trust Co. v. Board of Education of Chicago, 348 Ill 256, 266, 180 NE 819 (1932); Board of Education v. Frank, 64 Ill App 367, 373 (1896); Giddens v. Board of Education of Chicago, 398 Ill 157, 168, 75 NE2d 286 (1947). Citing numerous cases, our Supreme Court stated in the Union Trust Co. v. Board of Education of Chicago case at pp 266–267:

> "It has been repeatedly held that a mistake of appraisers in giving effect to an element of value not within the scope of the appraisal nullifies the appraisal since the result is an appraisal of a subject matter other than that submitted."

Some of the fundamental mistakes made by the appraiser Kuehnle in this case were: He used one method

47

of fixing value for the building and an entirely different method of fixing value for what he believed to be the lessee's permanent improvements, with the result that the sum of the values of these items which he felt constituted permanent improvements exceeded the value he attributed to the entire building with the permanent improvements attached. He further erred in treating as permanent additions or improvements things which are primarily or entirely repairs or replacements. He treated virtually the entire work done on the exterior of the building as a permanent addition or improvement though the work, aside from beautification and modernization, represented no change in actual function or utility of the exterior save the elimination of natural light and ventilation. Under the formula which we have previously elaborated, this exterior work would have to be regarded, to a degree, at least, as repair and replacement. There is no dispute that the exterior was badly deteriorated before this work was done. We do not feel the necessity for the court to make the appraisal nor to categorize by physical description and separation each and every item of repair, replacement, permanent addition or improvement. The appraisers can and should perform this function along the guidelines set forth above.

 The appraiser Newcombe testified that he attempted to visualize the building as though it were "kept alive" in its original 1914 condition without change or alteration. He felt that such was the meaning of the lease. Such a construction is erroneous. Newcombe further erred in taking into consideration as a depreciating factor the influence of the lease itself which required reappraisals every ten years. This was improper and unfair to the lessor. Such a construction was condemned by our Supreme Court in Springer v. Borden, 210 Ill 518, 71 NE 345 (1904) and the Giddens case previously cited. In the Springer case, the court said at page 522:

"According to the theory of defendant, a lease under very favorable terms to the lessee may be made still more favorable to him by showing that the terms of the lease depreciate the value of the reversion. A reduction in the value of the reversion would be equal to a reduction of rent, and the reduction of rent would reduce the value of the reversion, and so on in endless succession. The rule contended for is wholly impractical. . . . No such plan for fixing the rental could have been anticipated by the parties."

 The rent under the Kuehnle and Newcombe appraisals is $63,940 per year, whereas the rent for the preceding 20 years which the parties had agreed to, based on 1½% of the sales, has been from $140,000 to $165,000 per year. The rent under these appraisals is less than the 1924 rent of $75,000 per year and is only $5,000 more than the rent for the decade which began in 1913. A comparison of these rents give cause to the court to suspect that errors have been made. We have indicated above what we believe those errors to be. This is not to say that fraud, either actual or constructive, has been shown or is required to be shown by the plaintiff in order to invalidate the appraisals. In view of the rulings that have hereinabove been made, we need not pass on such matters.

 Other minor points were raised. The trial judge suggested conduct on the part of the plaintiff that would tend to preclude plaintiff from attempting to separate repairs and replacements from permanent additions and improvements. This was a suggestion of the court and was alluded to in its opinion. The trial court made no finding of estoppel. We find no conduct on the part of either party to this lease, however, which would operate to bar either party from the segregation of those items set forth in the lease. The fact that the parties agreed

to certain rentals on previous occasions without the necessity of resorting to the appraisal method spelled out in the lease does not bar them from resorting to the appraisal method when simple negotiation failed to resolve the rental for the current decade. Neither does the failure to keep a running account of repairs and replacements operate as an estoppel since the lease does not require this.

■ Evidence was offered by the plaintiff concerning the lease to the Bergner department store across the street. Such evidence to similar property in such close proximity was incorrectly excluded by the trial court. Such evidence is both relevant and material to a consideration of value. While it is not the function of the court to spell out for the appraisers in detail what matters they should consider, nor is it for the court to interfere with the methods used by the appraisers, there is no good reason why this court should avoid an opportunity to clarify and remedy misapprehensions and misunderstanding concerning this case in order that future litigation may be avoided and the matter may be resolved. In that connection, it is fair to say that the Bergner lease is relevant to the subject of this appraisal and could properly be considered by the appraisers in arriving at their decision. They would have to decide what weight should attach to this and the other factors.

■ Plaintiff has asked for an award to cover its attorneys' fees in this litigation. The lease provides that the lessee will pay lessor's attorneys' fees incurred as a result of any "default" on the part of the lessee. Although mistakes have been made in the resolution of this matter, the parties have attempted to utilize the procedures set forth in the lease to resolve the rent question. We find no actual "default" on the part of the lessee and accordingly we are not disposed to make an award of attorneys' fees in this case.

It should further be pointed out that contrary to the statements of Kuehnle and Newcombe and contrary to the finding of the trial court, there was no actual agreement on value between Kuehnle and Newcombe. The evidence showed that they did not reach agreement on the value of the building. What they reported was that the full fair cash value of the building was $502,000 because this was the minimum value called for in the lease. In fact, their appraisals were something less than this figure and were not in agreement with each other. Because of the lack of disinterest on the part of Kuehnle and because of the fundamental mistakes that were made by both Kuehnle and Newcombe, it would likewise be improper to average the appraisals as provided in the lease to arrive at a figure.

 Defendant urges that the decisions of the trial court ought to be sustained unless they are against the manifest weight of the evidence. The plaintiff has correctly pointed out that such rule is not the test in this case. The evidence concerning the appraiser's interest is largely undisputed. The controversy involves the application of the law relating to disqualification of appraisers and the manifest weight rule has no application. First Nat. Bank v. Dierking, 87 Ill App2d 4, 230 NE2d 520 (1967). Likewise, whether the trial court's conclusion that the appraisers correctly construed the lease is manifestly against the weight of the evidence is of no consequence. It is not the evidence with which we are concerned here. It is the law. The manifest weight of the evidence rule does not apply to constructions of law.

For the reasons stated, the decree of the trial court in this case is reversed. The parties are instructed to begin anew the appraisal procedure called for in the lease

subject, however, to the instructions, findings and guidelines of this opinion.

Reversed.

ALLOY, J., concurs.

STOUDER, P. J., dissents.

## DISSENTING OPINION

STOUDER, J.

I do not agree with the majority of the court. The judgment of the trial court is not, in my opinion, erroneous as found by the majority and I believe that the trial court's action ought to be affirmed. As can be seen from the majority opinion, there are two general areas of controversy involved in this case. The first relates to the qualifications of appraisers and the second relates to the infirmities in the appraisal itself.

With respect to the qualifications of appraisers, I am unable to find any support or authority for the proposition as stated in the majority opinion that requiring appraisers to be "competent, judicious and disinterested" imposes special qualifications upon the appraisers. Terms such as "impartial," "unbiased," "unprejudiced" and "disinterested" may have shaded differences in meaning as applied in a particular context. It does not appear that "disinterestedness" is a quality uniquely and distinctively different from the usual qualifications expected of an appraiser.

Indeed, the language in Giddens v. Board of Education, 398 Ill 157, 75 NE2d 286, negates any conclusion that disinterestedness is a special qualification not ordinarily expected of an appraiser. In Giddens the court states, "Nevertheless, notwithstanding the failure to incorporate in the leases a broad provision commanding that the appraisers shall be disinterested and impartial,

it is undoubtedly true that, in addition to an interest as lessee or mortgagee of school fund property or being a representative of one of the parties, other circumstances exist which will subject an appraiser to disqualification." Later in the opinion the court states, "While it is evident from an examination of the authorities that all do not agree as to the particular grounds which are sufficient to disqualify arbitrators and appraisers, two propositions may be deduced. First, each case must in a large measure, be governed by its own circumstances and second, an interest or bias to disqualify may be small, but it must be direct, definite and capable of demonstration, rather than remote, uncertain or speculative. The facts and circumstances existing in the case at bar compel the conclusion that whatever interest Clark and Seleenbrecher had in the valuation reported by the Board of Appraisers, it is indirect, remote and uncertain and consequently, insufficient to require disqualification." The majority opinion declines to follow or apply Giddens because of the purported special qualification of disinterestedness. Since the Giddens case itself dispels any such conclusion and since no other authority is cited in support thereof, it is my conclusion that the Giddens case is applicable and supports the trial court's conclusion.

The conclusion that a preformed opinion of value ought not disqualify an appraiser is, I believe, in accord with the intentions of the parties to such a lease. Periodic revaluation provisions in long-term leases were developed in the late 1800's and early 1900's in an effort to introduce a limited amount of flexibility into the lease. The provisions may be said to be an active compromise between the interest of an owner and user of land. Usually, as in the instant case, the property involved is commercial and the long-term lease is a business transaction entered into with deliberation and forethought. It is to the interest of each party that the periodic adjustments

53

provided for in such leases be determined as reasonably as possible. Before any adjustment or modification can be mutually agreed upon, it would appear reasonable that each party seek and secure professional advice. Such favorable advice may be then used as a basis for negotiation and in the event that the parties fail to agree, the parties would then propose the appointment of an appraiser favorable to their position. How can such favorable advice be known except that the person have a preformed opinion of value?

To hold as does the majority, that a preformed opinion of value thereby disqualifies an appraiser is contrary to the intention of the parties and subjects them to a hazard not originally intended or contemplated. The opinions of professional appraisers exercising their highest skill and best judgment may vary widely, yet according to the majority, the lessor and lessee are each expected to select an appraiser whose opinions of value are unknown. Such a result is not required since in my opinion, the mechanism of the appraisers appointed respectively by a lessor and lessee selecting a third appraiser, is sufficient to assure protection of the legitimate interest of each party.

At this point it should be observed that it was not only Kuehnle, the appraiser appointed by the lessee, who had a preformed opinion of the value of the property. Ehlers, the appraiser appointed by the lessor, also had such a preformed opinion. It cannot be said that he was any less an advocate of a particular position than was Kuehnle, whose qualifications are deemed suspect by the majority of the court. The fact that each of the parties appointed an appraiser who had previously formed an opinion of value of the property has two important consequences. First, it must be regarded as a mutually binding construction of the contract and second, neither party ought to be permitted to complain about the same alleged misconduct of the other.

As I have heretofore indicated, I believe that the Giddens case is of persuasive authority in support of the trial court's action and that the distinction which forms the basis for the majority's disregard for this authority does not exist. In any event, I do not believe that the force and authority of the Giddens case is diminished or rebutted by Scott v. Arden Farms Co., 26 Del Ch 283, 28 A2d 81, the principal case relied upon in the majority opinion to support reversal of the trial court. The Scott case can be distinguished on its facts and I find no justification for extending or applying the conclusions to the instant case.

In analyzing the Scott case, it should be noted that it is a decision of a trial court interpreting and applying a Delaware stock appraisal statute. In resisting the application of the shareholder for the appointment of a third appraiser, the corporation argued that Davis (appraiser appointed by shareholder) was disqualified for two reasons, first, he had been an agent of the shareholder and second, unknown to the corporation, he had previously formed an opinion of value of the shares in question. The quotation appearing in the majority opinion represents the court's views on the second objection and the court does, in fact, conclude that the prior opinion of value disqualified Davis. This result seems to me somewhat inconsistent with the court's disposition of the other alleged fact of disqualification, namely, Davis's employment. With respect to this issue the court indicated that the corporation ought to have known of Davis's employment because of his negotiations and accordingly, any objection thereto was waived. This reasoning would appear to be equally applicable to Davis's preformed opinion of value. If Davis, as an investment counselor, was negotiating with the corporation to secure the value of the shares, would it not follow that his negotiation was based on an opinion of value? Furthermore, the opinion is silent on the qualifications of Bancroft, the appraiser

appointed by the corporation, and accordingly, what the court might have decided if such an appraiser had also formed an opinion of value cannot be ascertained.

Accordingly, it is my opinion that the finding of the trial court that Kuehnle was disinterested is supported by the evidence and hence, his participation in the appraisal did not render such appraisal void.

This brings me to the next issue, namely, that the appraisers erred in construing the lease and the trial court erred in approving or agreeing with such construction. Appellant has devoted many pages of its brief to numerous charges of lease misconstruction by the appraisers Kuehnle and Newcombe. Appellant's major premise is that the valuation by Kuehnle and Newcombe was too low and, therefore, must be wrong. Recognizing that valuation appraisals are matters of judgment, appellant has attributed what it deems to be a bad result to improper construction of the lease.

In Sebree v. Board of Education of Chicago, 254 Ill 438, 98 NE 931, the court said, "As long as appraisers act honestly and in good faith, they have a wide discretion as to their methods of procedure and sources of information. Their conclusions, in the absence of fraud or mistake, will be binding upon the parties. Norton v. Gale, 95 Ill 533, . . . Stose v. Heissler, 120 Ill 433, 11 NE 161, . . . Pearson v. Sanderson, 128 Ill 88, 21 NE 200, Chicago Auditorium Ass'n v. Corporation of Fine Arts Bldg., 244 Ill 532, 91 NE 665 . . . ." Thus, the principal issue is whether the appraisers misconstrued the lease or whether the differences in valuation represented the exercise of an appraiser's judgment.

Appellant makes many generalized assertions as to errors of the appraisers, but when such generalizations are cleared away, specific respects in which the lease was misconstrued are lacking. The vagueness of appellant's position is mirrored in the opinion of the major-

ity of the court which although suggesting areas of error, nevertheless leaves the nature of such error vague and undefined.

The basis for alleged misconstruction of the lease is the amendment of 1924, which provides, ". . . the appraisers . . . shall not take into account the then value of any permanent additions or improvements, as distinguished from repairs or replacements, . . . ."

Each of the three appraisers valued all of the leased buildings as a whole. Ehlers valuation was $2,262,000, Newcombe's valuation was $850,000 and Kuehnle's valuation was $1,000,000. Each then deducted the value of the permanent improvements and found a value for the buildings less the value of such permanent improvements. Ehlers opinion of such value was $1,950,000, Newcombe and Kuehnle each concluded that after deducting the value of the permanent improvements, the value of the buildings was less than the minimum value as established by the lease ($512,000) and hence, each set forth such minimum valuation as the basis upon which the rent was to be computed. Neither Newcombe nor Kuehnle, as contended by appellant, found that the value of the permanent improvements exceeded the value of the buildings.

From the foregoing it appears that the low valuation objected to by the lessor cannot be the result of misconstruction of the 1924 lease amendment quoted above, but rather represents differences in valuation of the buildings as a whole. The appraisers employed a variety of techniques and methods in arriving at their opinions of value. This is what appraisers are expected to do.

Union Trust Co. v. Board of Education, 348 Ill 256, 180 NE 819, and Marceron v. Chevy Chase Services, Inc., 258 F2d 155, announce the general rule that appraisers must act in accord with the directions establishing their authority. Such cases do not support the conclusion that

the appraisers in the instant case violated any directions contained in the lease. In the Union Trust Co. case, supra, the appraisers did not determine fair cash market value. Instead, they determined a fair rental value when owned by a particular owner, namely, a tax-exempt agency. In the Marceron case, supra, the court concluded that the two lots described in separate leases ought to have been appraised as a unit. Neither of the foregoing cases presents any factual similarity or analogy from which it can be concluded that the appraisers in the case at bar failed to follow the directions in the lease in any particular respect.

The majority opinion alludes to errors which the appraisers allegedly committed in determining that certain items were permanent improvements rather than replacements. It does not appear to me that permanent improvements can be distinguished from replacements as a matter of law and that, in fact, this is an area peculiarly requiring the competence of appraisers, as well as an area in which there may be significant differences of opinion. Although the majority has indicated that the appraisers Kuehnle and Newcombe erred in the allocation of particular items as between permanent improvement and replacement, yet no criteria or formula is offered or proposed which suggest that the allocation is anything other than a matter of judgment.

If the appraisers erred as indicated by the majority of the court, it should follow that other appraisers ought to be able to ascertain from the opinion what they should do differently from what Newcombe and Kuehnle and for that matter Ehlers, did. To me, the opinion offers no such directions or guidelines and consequently, the absence thereof seems to me to be contrary to the conclusion that the appraisers erred in construing the lease.

A further error is attributed to the appraiser Newcombe in that he considered the revaluation lease as de-

preciating the value of the premises. According to the majority, this was improper, citing an authority Springer v. Borden, 210 Ill 518, 71 NE 345, and Giddens v. Board of Education, 398 Ill 157, 75 NE2d 286. The Springer case did hold that such consideration was improper. However, I do not believe that the Springer v. Borden case is applicable. Except in a companion case decided at the same time (Columbia Theatre Amusement Co. v. Adsit, 211 Ill 122, 71 NE 868), the Springer case had not been followed in any subsequent decision. In Sebree v. Board of Education of Chicago, supra, and Giddens v. Board of Education, supra, the court declined to follow Springer and in each case held that the appraisers could consider the effect of a revaluation lease. The court indicated that there was a difference of opinion among reputable appraisers as to the effect of such a lease upon value, but concluded that the appraisers were at liberty to consider its possible effects. Although Springer v. Borden, supra, has not been specifically overruled, it would appear that both in Sebree and Giddens its principle holding was rejected, and, under the authority of Giddens and Sebree, the appraiser Newcombe committed no error in considering the effect of the revaluation lease.

In conclusion, the history of revaluation leases and the litigation with respect thereto, as well as the history of the lease involved in this case, reveal the difficulties and problems associated with such leases. The appraisal procedure is usually, as in the instant case, resorted to when the parties are in disagreement on values. Either the lessor or lessee is likely to be disappointed or even outraged by a result which is contrary to their hopes or expectations. I believe that the appraisal procedure was fairly conducted in a manner and before a forum selected by the parties. Accordingly, I believe that the trial court's action ought to be affirmed.